**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TM Technologies Incorporated, | No. CV-18-00286-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| Hand Technologies Incorporated, et al., | |
| Defendants. | |

The Court grants the Motion to Dismiss in part and denies it in part for the reasons explained below.

## I. Background

TM Technologies (the Company) is a tech company that began developing a type of radio carrier signal to increase bandwidth over existing networks. (First Amended Complaint (FAC) (Doc. 37) at ¶2.) This waveform technology is based on Transpositional Modulation[1] of a carrier signal that allows for a higher data transfer rate. *Id*. The Company refers to the technology as "TM." *Id*.

The Company advanced TM to the point where it worked in an analog format in 2013, but for modern uses TM would need to be viable in a digital format. *Id.* ¶64-65. In order to further develop TM, the Company engaged with Alan Hand and his tech company, Hand Technology, Inc. (Hand Tech), to develop TM in a digital format and engineer the hardware that would be necessary to demonstrate TM IP[2]. *Id.* ¶64-66.

---
[1] The physics on Transpositional Modulation has not been made public.
[2] An IP Core is a reusable integrated circuit design that is intellectual property.

The agreement between the Company and Hand Tech was executed in stages and, collectively, referred to as the Engineering Service Agreement (ESA). *Id* at ¶83, ¶96. In the initial stage, Hand Tech agreed to determine whether TM could be converted to a useable digital format. *Id* at ¶83. As part of this initial agreement (Phase One Contract), Hand signed an Invention Assignment Agreement (IAA (Doc. 1-2, Ex. A) at 3-5, dated 6/17/2015), a Non-Disclosure Agreement (NDA (Doc. 1-2, Ex. B) at 7-9, dated 6/11/2015), and the Engineering Service Agreement, (ESA (Doc. 1-2, Ex. C) at 11-20, dated 3/1/2016).

The ESA was signed March 1, 2016, memorializing the prior oral agreement by the Company to pay, and its initial payment of, $625,000 for Phase One work, and setting out the remainder of the Phase One work to be completed by March 24, 2016, with a Milestone 1, payment of $400,000. A month before the end of Phase One, Hand Tech had communicated to the Company that TM could be translated into a digital format and the effort should be made to develop TM for the market. (FAC (Doc. 37) at ¶87.) The ESA, accordingly, included "Phase Two" contract provisions, which reflected Milestones 2-4 payments for a fixed price total of $2,000,000 to complete development of TM IP and four radios (2 systems) capable of demonstrating TM IP to prospective customers. (ESA (Doc 1-2 Ex C) at 18-19). The four milestones set specific deliverables to be completed by a certain date corresponding to payments to be made by the Company to Hand Tech. *Id.*

The contract also had a provision for changing to an hourly rate if it became more equitable for the parties. *Id.* In order to migrate to an hourly rate, the contract called for both parties to sign a written agreement with a not-to-exceed value. The billing rates that were to be used if the contract migrated to an hourly rate were predetermined in the ESA Contract. *Id.* at 20.

Milestones 1 and 2 required reporting on the simulation of TM and an IP module plan for 1 and completed design and layout for the PC board for 2. *Id.* at 19. For Milestones 1 and 2, Hand Tech was to be paid $400,000 dollars each. *Id.* The Company made the payments when they received invoices from Hand Tech indicating Milestones 1 and 2 had been reached. The Company made the last of the two payments on May 12, 2016. At that point, the Company had paid a total of $1,425,000 to Hand Tech leaving a balance of

$575,000 for the completion of the final two milestones per the Phase Two contract provisions.

Shortly after Milestone 2 was attained, on May 31, 2016, Alan Hand told the Company that he was able to add Amplitude Modulation to the Transpositional Modulation to increase the number of bit/s/Hz[3] the signal could carry from 12 bit/s/Hz to 16 bit/s/Hz. (FAC (Doc. 37) at 14, ¶103.) In an email sent on May 31, 2016, from Hand to Dan Hodges (CEO of TM Tech), Hand stated that Hand Tech is adding Amplitude Modulation to TM (combined notation TM-A) in the simulations and the FPGA implementation, which involved research and development outside the scope of the phase two contract. The addition would cost between $250,000 to $300,000. *Id*. In a response email, the Company agreed to pay an additional $250,000 because they were intending to add Amplitude Modulation in a later phase, and because the "team greatly exceeded the allotted hours." *Id* at 24. It appears that the parties intended the emails to create a Contract Addendum (email Contract Addendum). (Doc. 1-2, Ex. D) at 23-24, dated 5/31/2016).

As part of the addition, Hodges noted, the Company still needed the programming and data for Transpositional Modulation only. *Id*. It is from this point in time that the disagreements between the parties ensued. The Plaintiff's claim that Phase Two Milestones 3 and 4 were never met. (FAC (Doc. 37) at 16, ¶116-118. Hand Tech, despite repeated assurances that they were almost complete, continued to delay the delivery of the radio units past the contract's timeline. *Id.* ¶119. The Company asserts that in November 2016, another amendment was required to establish a new timeline for a list of items to be completed, which included the Phase Two engineering of the 16 bit/s/Hz version of TM-A and the additional payment of $250,000. *Id*. ¶¶ 19, 119 They also claim that what Hand Tech delivered to the Company failed to meet the requirements specified in the Phase Two contract; Specifically, they only delivered one of the four radio units called for, and the unit was not up to specifications. *Id.* ¶125-26. The radio was only capable of 12 bit/s/Hz and did not have enough ports to verify that it was functional. *Id*.

---

[3] Bit/s/Hz is the measure of spectral efficiency. Higher Bit/s/Hz corresponds to faster data transfer across a given bandwidth.

Hand presents a different story. According to Hand, Hand Tech delivered on the Phase Two contract, but the work required was beyond what was originally conceived of under the contract and the Company turned down the higher bit version because of other issues it created. The contract was for the construction of the technology TM had already patented. (FAA (Doc. 47) at 20, ¶109-17); (Hodges Decl. (Doc. 1-2, Ex K) at 38). Once Hand Tech began work, it discovered that one of the components (the "sepex" or "Demodulator[4]") did not function the way it was supposed to, and Hand Tech had to spend significant time on research and development for reengineering. (Hodges Decl. (Doc. 1-2, Ex K) at 38.) This R&D time is part of what they are billing for at an hourly rate because it was not part of the original contract. *Id*. After several months of development, Hand Tech produced a radio system for testing with a combined capacity of 12 bits/Hz, and all the software and data was provided to the Company as specified. *Id*. At that point, Hand Tech claims the Phase Two contract obligations were completed.

The email Contract Addendum, according to Hand, was only to test the possibility of increasing the capacity of TM by adding Amplitude Modulation to create TM-A. *Id* at 39. He specifically told the Company that it would be a hit or miss experiment, but initial modeling was promising. *Id.*, Exs. K at 39, D at 23. After Hand Tech built the TM-A version, he notified the Company that it was functional, but <u>it increased the signal-to-noise ratio (SNR) significantly</u>, which means in order to implement it a stronger and larger antenna system would be required. (Hodges Decl. (Doc. 1-2), Ex. K at 39.) The Company declined to pursue it further and the performance required by the email Contract Addendum was completed. *Id.*

Finally, Hand Tech claims that after the Company denied the TM-A technology with the high SNR, they changed the requirements. They told Hand Tech they needed a 16 bits/Hz version of TM-A <u>without the SNR increase</u>. Hand Tech successfully developed a system capable of this, but according to Hand, the relationship was no longer governed by the Phase Two Contract or the email Contract Addendum. *Id*. The system they developed

---

[4] A demodulator is the hardware, or software in a "software defined radio," that separates the data from the carrier wave.

- 4 -

is what Hand Tech refers to as the "Unbalanced Side Lobe Modulation," and the Company has made no additional payments for the development of this technology. *Id*. Hand Tech is now withholding this version and threatening to sell it, if the Company refuses to pay for the additional work. (Hodges Decl. (Doc. 1-2), Ex. L at 47.)

The Company filed suit against Hand Tech alleging fraud, breach of contract for both the Phase Two ESA Contract and the email Contract Addendum, misappropriation of trade secrets, misappropriation of confidential information, replevin, conversion, and requests for preliminary and permanent injunctive relief. (FAC (Doc. 37) at 23-31, ¶¶178-230.) The Company also attempts to pierce the corporate vail by naming Alan Hand and his wife in the lawsuit, with the allegation that Alan Hand used the Company payments to purchase a boat.

In their First Amended Answer (FAA), Defendants Alan Hand and Hand Tech (Hand Tech) have denied all allegations, asserted 20 affirmative defenses, and 12[5] counter-claims against the Company including: breach of contract (Counts I and XII); unjust enrichment (Counts II and VII), promissory estoppel (Count III); negligent misrepresentation (Counts IV and VIII); intentional misrepresentation (Counts V and IX), interference with prospective advantage (Count VI); breach of escrow duties (Counts X and XI), and specific performance (Count XII).

Defendants TerraNova Capital Partners and TerraNova Capital Equities, Inc (TerraNova) have not been served. TerraNova is named in Counts III through XI. Hand Tech alleges that the Company acted through its investment banker, TerraNova, an entity responsible for raising investment capital for the Company, and through John Steinmetz, Chairman and President of TerraNova and a member of the Company's board of directors. Hand Tech has not served TerraNova and did not name Steinmetz as a Defendant.

---

[5] The FAA includes two Count XIIs for both the breach of contract claim related to the alleged optional equipment sale/purchase and the specific performance claim for the alleged optional equipment purchase agreement.

## II. Motion to Dismiss Counter-Claims

In response to the counter claims, the Company filed a Motion to Dismiss under Rule 12(b)(6).

To survive a motion to dismiss, the party must plead facts with sufficient particularity so that its claim to relief is more than just conjecture. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." *Shannon v. Verizon Wireless, LLC.,* WL 7755354 (D. Ariz. 2015). The allegations "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself." *Id.* Dismissal is warranted where the complaint fails to allege enough facts to state a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 1) Breach of Contract Counter-Claims

Hand Tech's breach of contract claim (Count I) alleges that the Company breached the Phase Two contract provisions in the ESA because Hand Tech adequately performed its contractual obligations and the Company failed to compensate them accordingly. (FAA (Doc. 47) ¶¶65-67.) Hand Tech claims it delivered a demonstration set of radios capable of 12 Bit/s/Hz and all the accompanying software and data. *Id.* ¶30. The Company decided after the fact that 12 Bit/s/Hz was not satisfactory and demanded 16 Bit/s/Hz. *Id.* ¶¶51-52. Hand Tech also claims that the Company received 2 radios but disassembled one in an attempt to reverse engineer it and are now claiming they only got one. *Id.* ¶ 121-125.

The Company's Motion to Dismiss the counter claims argues that Hand Tech did not allege sufficient facts for the claim to survive. They point to a lack of evidence of a contract modification authorizing hourly rates. That is not, however, the central assertion of the Hand Tech breach of contract claim. Hand Tech is claiming that it delivered what was required under the ESA and the Company failed to pay. Enough facts are alleged for this claim to survive the motion to dismiss.

The second breach of contract claim (Count XII) refers to an alleged contract for the optional purchase of specialized equipment loaned to Hand Tech for the project. (FAA

(Doc. 47) ¶¶ 60, 117.) The alleged agreement flies in the face of bailment agreements, relied on by the Company to support its claims for replevin and conversion, which do not include an option to purchase. *See* (FAC (Doc. 37) ¶¶ 158, 162, 163, 166, 169 231, 233, 239, 241); (Reply in Support of Motion for Preliminary Injunction, (Doc. 50-1, Exs. P, Q) Bailment Agreements 10/12/2015 and 2/2/2016 at 6-10) Hand Tech argues that the Company has not filed a motion for summary judgment and when a contract is ambiguous, "'the parties may offer evidence to help interpret it, in which case construction is a question for the jury.'" (Response (Doc. 65) at 9-10.) Hand Tech, however, fails to allege even one single fact to support its assertion that the "contract is ambiguous." It fails to even direct the allegation of ambiguity at the bailment agreements; it ignores the existence of the bailment agreements.

The Company, and likewise the Court, may consider materials incorporated into the complaint, even if not attached as an exhibit, on a motion to dismiss. (Motion to Dismiss (Doc. 62) at 13 n. 4 (citing *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010)). The bailment contracts state, as follows:

> Nothing in this Agreement shall constitute an offer by Bailor to sell or by Bailee to buy said Bailed Property, or give rise to any obligation to pay any charge or rental whatsoever of the Bailed Property in its possession. Bailee is not responsible for reasonable wear and tear to the Bailed Property.

*Id.* (quoting Bailment Agreements ¶ 5 (Doc. 50-1, Exs. P-Q).)

In the face of the alleged Bailment Agreements, Hand Tech alleges no facts to support its breach of contract claim because it alleges no facts to support its claim that an agreement existed between the parties for Hand Tech to purchase the specialized equipment loaned to Hand Tech by the Company for the project. Count XII fails.

Defendant's counter-claim for specific performance of this alleged agreement, also numbered (Count XII), likewise fails.

**2) Unjust Enrichment Claims**

To make a claim for unjust enrichment, the pleading party must show that he conferred some benefit onto the defendant, and it would be unfair for the defendant to retain that benefit without paying for it. *Bloomgarden v. Coyer*, 479 F.2d 201, 211 (D.C. Cir.

1973). Unjust enrichment is applicable where there is no contract, express or implied. *Id.* "Where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat. Bank*, 548 P.2d 1166, 1171 (Ariz. 1976).

Hand Tech asserts two unjust enrichment claims, one regarding the failure of payment under the original ESA and the other for the development of Unbalanced Side Lobe Modulation. The Company's Motion to Dismiss argues that the express, written Phase Two ESA provisions preclude a claim of unjust enrichment regarding the development of any technology related to the TM project.

Hand Tech's first unjust enrichment claim (Count II) is based on the Company's failure to pay after the delivery of Milestones 3 and 4 of the ESA Contract. Because this relationship is governed by an express contract, an unjust enrichment claim is not proper and should be dismissed. The Company's claim itself alleges Hand Tech failed to perform under the original ESA. If the Company's claim fails, Hand Tech may recover under the contract for the Company's failure to pay.

The second unjust enrichment claim (Count VII) is for the development of Unbalanced Side Lobe Technology. Hand Tech repeatedly alleges it "created this design to double the output (from 8 to 16bits/Hz of data), with the knowledge of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement [the email Contract Addendum]. (Doc. 1-2, Ex. D) at 23-24, dated 5/31/2016); (FAA (Doc. 55) ¶¶ 34, 144, 147, 148, 150, 151, 156.) Arguably, the development of Unbalanced Side Lobe Technology is outside the original contract. *Id.*¶¶ 62-146. If true, the ESA contract would not govern, and if there is no implied contract, unjust enrichment may be the proper claim. *Id.* ¶¶ 147-156/) In the event, the Company prevails in forcing Hand Tech to turn over the technology conferring a benefit on the Company, Hand Tech has a reasonable expectation of get paid for their efforts, and it would be unjust for the Company to take the technology, worth millions of dollars, without compensating Hand Tech for the development work it did on the Unbalanced Side Lobe Technology.

### 3) Promissory Estoppel

Hand Tech asserts a counter claim for promissory estoppel (Count III). According Hand Tech, it communicated to the Company that a flaw existed in their patents. The Company agreed Hand Tech needed to find a solution and also agreed that this work was outside the scope of the original contract. Hand Tech then proceeded to reengineer the faulty component with the understanding that the Company would be paying for the additional work.

For Hand Tech to succeed on a claim for promissory estoppel, it must show that the Company made a promise knowing that Hand Tech would reasonably rely on that promise, and that Hand Tech did in fact rely on the promise to its detriment. *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002). However, "A claim for promissory estoppel cannot exist as a matter of law when the subject matter is governed by contract." *Nelson v. Frank*, 2018 WL 6435766 at *3 (D. Ariz. Dec. 7, 2018). The Court cannot dismiss this counter claim based solely on the existence of the ESA because its "primary effort" was to develop and test an IP module that "implements the TM waveform. The TM IP Module will implement TM Modulation [and] TM demodulation . . .." (ESA Appendix. B. (Doc. 1-2) at 18). The use of the word implement implies that the contract only contemplated use of the demodulator, not the complete development of a TM demodulator. The allegations that Hand Tech completed work on a separate project, outside the scope of the ESA and email Contract Addendum, support the promissory estoppel counter claim.

### 4) Negligent Misrepresentation

Hand Tech makes two allegations in his counter claims for negligent misrepresentation (Counts IV and VIII). In Count IV, Hand Tech's first allegation is that the Company negligently misrepresented that it would pay for the additional service of reengineering the demodulator. Second, Hand Tech claims that the Company, through TerraNova promised to hold $500,000 of the Company's funds in escrow for the benefit of Hand Tech as payment toward the outstanding amounts owed under the ESA, thereby

inducing Hand Tech to work without pay on developing the Unbalanced Side Lobe Modulation Technology.

The elements of negligent misrepresentation in Arizona are: 1) the defendant provided false information in a business transaction; 2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; 3) the defendant failed to exercise reasonable care in obtaining or communicating the information; 4) the plaintiff justifiably relied on the incorrect information, and 5) resulting damage. *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014). The misrepresentation must be of a material fact, and not a promise of future performance that is then unfulfilled. *Ahmed v. Collins*, 530 P.2d 900, 902-03 (Ariz. Ct. App. 1975).

In Count IV, Hand Tech claims that the Company falsely stated that they would compensate Hand Tech beyond the $2,000,000 owed under the Phase Two Contract for reengineering the demodulator, the Unbalanced Side Lobe Modulation Technology. This is nothing more than a claim based on a future promise to pay and not a representation of material fact. This claim is not cognizable under Count IV because the Defendant does not point to any misrepresentation of material fact other than the promise of future performance to base the claim on.

The second claim in Count IV survives the Motion to Dismiss. Hand Tech alleges that the Company misrepresented that $500,000 was being held by TerraNova for payment for work done under the ESA and this promise induced Hand Tech to begin work outside of the scope of the ESA payment provisions to develop the Unbalanced Side Lobe Modulation Technology. Hand Tech alleges it reasonably relied on the misrepresentation that payment for work performed under the ESA and email Contract Addendum was assured. This reliance resulted in damages when the Company refused to pay for Hand Tech's development of the Unbalanced Side Lobe Modulation Technology; Hand Tech also suffered damages when it lost opportunities to do business with other companies because it was working for the Company.

Hand Tech does not need to reallege the negligent misrepresentation claim (Counts VIII) to seek damages for lost business opportunities related to loss of work from other business endeavors that were not undertaken because Hand Tech was working to develop the Unbalanced Side Lobe Modulation technology. Likewise, Hand Tech may seek damages for lost opportunity to sell the Unbalanced Side Lobe Modulation technology. Count VIII fails to state a claim of misrepresentation related to the allegation that the Company misrepresented it owns the Unbalanced Side Lobe Modulation technology. While this is an alleged misrepresentation, there is no allegation that it induced Hand Tech to act.

### 5) Intentional Misrepresentation Claims

The allegations in the counter claims for intentional misrepresentation (Counts V and IX[6]) mirror the claims for negligent misrepresentations, except it is alleged the misrepresentations were made "intentionally" instead of negligently. (FAA (Doc. 55) ¶ 127.)

As it could not allege negligent misrepresentation, Hand Tech cannot allege intentional misrepresentation based on the allegation that the Company falsely stated that it would compensate Hand Tech beyond the $2,000,000 owed under the Phase Two Contract for reengineering the demodulator.

A claim for fraud requires proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its

---

[6] Count IX realleges the intentional misrepresentation claim alleged in Count V and similarly fails to state a claim of misrepresentation related to the allegation that the Company misrepresented it owns the Unbalanced Side Lobe Modulation technology. While this is an alleged misrepresentation, there is no allegation that it induced Hand Tech to act. Additionally, Hand Tech was fully aware of the contractual arrangements it had with the Company. A requirement for fraud is that the hearer be ignorant of the statement's falsity. The Court dismisses Counts IX.

falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it, and (9) the hearer's consequent and proximate injury. *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033–34 (Ct. App. 2010).

When pleading a fraud claim, the party must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, "who, what, where, and how" must be identified, as well as "what is false or misleading about the statement." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).

Here, Hand Tech alleges an "intentional" misrepresentation that $500,000 would be set aside in escrow sufficient to pay for the work performed under the contracts induced Hand Tech to undertake work outside the scope of the contacts, meaning the alleged set aside induced Hand Tech to work outside the scope of the ESA. Hand Tech alleges Steinmetz, on behalf of the Company and Terra Nova said that the $500,000 in funds were held "until 'TM [the Company] had to have the money.'" (FAA (Doc. 55) ¶131.) These two allegations do not support a claim that the speaker, Steinmetz, knowingly made a misrepresentation when he said TerraNova would set aside $500,000 for Hand Tech. These allegations are insufficient to convert a negligent misrepresentation to a fraudulent claim under the heightened requirement of Rule 9(b). Counts V and IX, including punitive damage claims, are dismissed.

### 6) Interference with Perspective Business Advantage Claim

While poorly plead,[7] the essence of Count VI is the allegation that the Company, without justification, claims it owns the Unbalanced Side Lobe Technology that Hand Tech developed outside the scope of the agreements between the Company and Hand Tech. As a result of the Company's misrepresentation, Hand Tech has been and continues to be unable to market and sell the Unbalanced Side Lobe Technology. This counter claim

---

[7] The defendants agree that the counter claim for interference with perspective business advantage does not contain enough detail. They request leave to amend.

remains to be resolved on summary judgment or at trial.

### 7) Breach of Escrow Claims

The Court dismisses the breach of escrow claims (Counts X and XI) because Hand Tech fails to allege the existence of any escrow account or other fact to support an assertion of a breach of escrow duties.

## III. Conclusion

For the reasons explained above, the Court grants the Motion to Dismiss in part, as follows: Counts II, V, and VIII through XII, including the claim for specific performance. Counter claimant Hand Tech has leave to file a Second Amended Answer, to reflect the rulings contained in this Order regarding the counter claims, including amendment of Count IV and to state Count VI in greater detail.

**Accordingly,**

**IT IS ORDERED** that the Motion to Dismiss (Doc. 62) is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that Counts II, V, and VIII through XII are dismissed.

**IT IS FURTHER ORDERED** that Counter claimant Hand Tech may file a Second Amended Answer, reflecting the rulings of this Court regarding dismissal of claims and the amendment of the claims alleged in the FAA, Counts IV and VI

**IT IS FURTHER ORDERED** that the Second Amended Answer shall be filed within 14 days of the filing date of this Order.

Dated this 24th day of September, 2019.



Honorable David C. Bury
United States District Judge