**LAW OFFICE OF LYNN ERIC GOAR, P.C.**
1955 WEST GRANT ROAD #125G
TUCSON, ARIZONA 85745-1470
(520) 740-1447/FAX (520) 829-3620
lynn.goar@hotmail.com

LYNN ERIC GOAR, ESQ.
(State Bar of Arizona #12484)

ROY S. McCANDLESS, ESQ.
(State Bar of N.H. 11850, *pro hac vice*)
Attorney for Defendants

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| | |
|---|---|
| TM Technologies, Inc., a Delaware corporation,<br><br>       Plaintiff,<br><br>v.<br><br>Hand Technologies, Inc., a Kansas company; Rex Alan Hand;<br><br>       Defendants,<br><br>and<br><br>TerraNova Capital Partners, Inc., and TerraNova Capital Equities, Inc. | No.: 4:18-CV-286-JAS<br><br>**SECOND AMENDED ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

### SECOND AMENDED ANSWER AND COUNTERCLAIM

   Hand Technologies, Inc. (Hand Technologies), Rex Alan Hand (Alan), (collectively, the Hand Defendants or Defendants) file this Second Amended Answer and Affirmative Defenses to the Plaintiff's Amended Complaint together with their attorney, the Law Office of Lynn Eric Goar, P.C. and hereby states as follows:

1

1.    With respect to the allegations in paragraph 1, Alan and Hand Technologies deny them.   Cynthia Hand ("Cynthia") is without information to admit or deny the allegations, and therefore she denies them.

2.    With respect to the allegations in paragraph 2, Alan and Hand Technologies admit that TM Technologies owns patents, but they deny that the patents offer dramatic bandwidth increases, but are limited to 50% improvement.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

3.    With respect to the allegations in paragraph 3, Alan and Hand Technologies deny them.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

4.    With respect to the allegations in paragraph 4, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

5.    With respect to the allegations in paragraph 5, Alan and Hand Technologies deny the first sentence of paragraph 5. Alan and Hand Technologies are without information to admit or deny the remaining allegations, and therefore they are denied.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

6.    With respect to the allegations in paragraph 6, Alan and Hand Technologies admit that Hand Technologies contracted with TM through a number of agreements, one of which was TM Invention Assignment & Secrecy Agreement. That agreement speaks for itself. Alan and Hand Technologies deny all other allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

7.    With respect to the allegations in paragraph 7, Alan and Hand Technologies admit that Hand Technologies concluded a viability study. Alan and Hand Technologies

deny the balance of the allegations.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

8.     With respect to the allegations in paragraph 8, Alan and Hand Technologies deny them and states that the contracts speak for themselves. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

9.     With respect to the allegations in paragraph 9, Alan and Hand Technologies deny them and states that the contracts speak for themselves. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

10.    With respect to the allegations in paragraph 10, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that Hand Technologies proposed additional work to try to improve the number of bits per hertz and estimated a cost of $250,000 to $300,000 for such work. In multiple communications, Hand Technologies made it clear to TM that the data rate could be increased, but might not be commercially viable, as the underlying physics was not then understood.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

11.    With respect to the allegations in paragraph 11, Alan and Hand Technologies admit that Hand Technologies agreed to do the work for $250,000.00, and deny all other allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

12.    With respect to the allegations in paragraph 12, Alan and Hand Technologies admit that Hand Technologies and TM entered into an agreement and that TM paid $250,000.00 as agreed, and deny all other allegations.   Cynthia is without

information to admit or deny the allegations, and therefore she denies them.

13. With respect to the allegations in paragraph 13, Alan and Hand Technologies admit the first sentence, but are without information to admit or deny the remaining allegations, and therefore they are denied. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

14. With respect to the allegations in paragraph 14, Alan and Hand Technologies deny them. The timetable and scope of the agreement was modified due to flaws in TM's patents. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

15. With respect to the allegations in paragraph 15, Alan and Hand Technologies deny them. The timetable and scope of the agreement was modified due to flaws in TM's patents. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

16. With respect to the allegations in paragraph 16, Alan and Hand Technologies deny them. The timetable and scope of the agreement was modified due to flaws in TM's patents. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

17. With respect to the allegations in paragraph 17, Alan and Hand Technologies deny them. The timetable and scope of the agreement was modified due to flaws in TM's patents. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

18. With respect to the allegations in paragraph 18, Alan and Hand Technologies deny them. The timetable and scope of the agreement was modified due to flaws in TM's

patents.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

19.   With respect to the allegations in paragraph 19, Alan and Hand Technologies deny them. The timetable and scope of the agreement was modified due to flaws in TM's patents.   The document referred to did not constitute an agreement by Hand Technologies to provide the deliverables without additional compensation, as TM's patents were flawed. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

20.   With respect to the allegations in paragraph 20, Alan and Hand Technologies deny them.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

21. With respect to the allegations in paragraph 21, Alan and Hand Technologies deny them.   Hand Technologies fulfilled its obligations under the Engineering Services Agreement, executed on February 16, 2016, upon delivery of a contract compliant demonstration radio on February 24, 2017, along with a documentation package on March 1, 2017, with Hand Technologies having to create a new design because of the flaws in TM's patents.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

22.   With respect to the allegations in paragraph 22, Alan and Hand Technologies deny them.   The radio performed as required.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

23.   With respect to the allegations in paragraph 23, Alan and Hand Technologies deny them.   The work promised was completed per the agreement.   Cynthia is without

1    information to admit or deny the allegations, and therefore she denies them.

2    24.   With respect to the allegations in paragraph 24, Alan and Hand Technologies deny

3          them.  TM's intellectual property as originally represented was useless and Hand

4          Technologies labored to find a solution that worked, which it did, and its

5          subcontractor received a patent for that work, which was assigned to TM.  Cynthia is

6          without information to admit or deny the allegations, and therefore she denies them.

7    25.   With respect to the allegations in paragraph 25, Alan and Hand Technologies deny

8          them as an example of "empty assurances".  TM's intellectual property as originally

9          represented was useless and Hand Technologies labored to find a solution that

10         worked, which it did. Cynthia is without information to admit or deny the

11         allegations, and therefore she denies them.

12    26.  With respect to the allegations in paragraph 26, Alan and Hand Technologies deny

13         them as an example of "empty assurances".  TM's intellectual property as originally

14         represented was useless and Hand Technologies labored to find a solution that

15         worked, which it did. Cynthia is without information to admit or deny the

16         allegations, and therefore she denies them.

17    27.  With respect to the allegations in paragraph 27, Alan and Hand Technologies deny

18         them as an example of "empty assurances".  TM's intellectual property as originally

19         represented was useless and Hand Technologies labored to find a solution that

20         worked, which it did. Cynthia is without information to admit or deny the

21         allegations, and therefore she denies them.

22    28.  With respect to the allegations in paragraph 28, Alan and Hand Technologies deny

23         them as an example of a failure to produce deliverables.  TM's intellectual property

as originally represented was useless and Hand Technologies labored to find a solution that worked, which it did. TM has unjustifiably refused to pay for that work. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

29.    With respect to the allegations in paragraph 29, Alan and Hand Technologies deny them as an example of "empty assurances".  TM's intellectual property as originally represented was useless and Hand Technologies labored to find a solution that worked, which it did. TM unjustifiably refused to pay for the work. The documents speak for themselves. The work was beyond the scope of the original contract. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

30.    With respect to the allegations in paragraph 30, Alan and Hand Technologies deny them.  TM's intellectual property as originally represented was useless and Hand Technologies labored to find a solution that worked, which it did. TM unjustifiably refused to pay for the work. The documents speak for themselves.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

31.    With respect to the allegations in paragraph 31, Alan and Hand Technologies deny them.  TM's intellectual property as originally represented was useless and Hand Technologies labored to find a solution that worked, which it did. TM unjustifiably refused to pay for the work. The documents speak for themselves.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

32. With respect to the allegations in paragraph 32, Alan and Hand Technologies admit that Hand Technologies sent the March 23, 2018, memorandum, explaining in brief

7

terms the history of contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless. The memorandum speaks for itself. The ESA specifically provides for compensation on an hourly basis. Hand Technologies labored to find a solution that worked, which it did. Hand Technologies informed TM of the hourly work by email of Alan Hand to TM in November 2016, stating, "As we discussed, developing a new concept and design for the Sepex was beyond the scope of the fixed price portion of the contract. We completed and tested the TM version of Sepex in June. So we have spent more than four months working to replace it. Brian billed 279 hour so far for his part of the effort. Harvey has billed 320 hours his part of that effort. I have spent a significant part of my time on that effort also. I will however only bill for 160 hours." See Document 2-3, page 41 of 53. TM unjustifiably refused to pay for the work. The documents speak for themselves. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

33. With respect to the allegations in paragraph 33, Alan and Hand Technologies deny them. Hand Technology fulfilled its obligations to TM and delivered to it the technology agreed under the ESA. The technology TM now demands that Hand Technology deliver to it has not been paid for, and falls entirely outside the original ESA. TM simply has no right to demand delivery of a product it wants but refuses to pay for. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

34. With respect to the allegations in paragraph 34, Alan and Hand Technologies admit

that Hand Technologies emailed Mr. Langberg, that Hand Technologies created "unbalanced modulation" with TM's knowledge and consent to pursue the goal of doubling the amount data (in the prototype, doubling from 8 bits to producing a radio that transfers 16 bits per hertz), which product was not produced for TM under the ESA. TM unjustifiably claimed ownership of that work. The documents speak for themselves and the course of dealing between the parties belies TM's allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

35. With respect to the allegations in paragraph 35, Alan and Hand Technologies deny them. Hand Technologies' FPGA Xilinx design suite documents and preserves each day's work on the FPGA code. All software and code is loaded into Hand Technologies' common code tree library. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

36. With respect to the allegations in paragraph 36, Alan and Hand Technologies deny them. Hand Technologies never agreed to work without compensation. Hand Technologies labored to meet TM's increasing demands, found a solution that worked using its own resources, and not using any of TM's intellectual property, and now which TM unjustifiably demands it owns while refusing to pay for it. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

37. With respect to the allegations in paragraph 37, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

38. With respect to the allegations in paragraph 38, Alan and Hand Technologies deny

them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

**<u>PARTIES</u>**

39. With respect to the allegations in paragraph 39, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

40. With respect to the allegations in paragraph 40, the Hand Defendants admit them.

41. With respect to the allegations in paragraph 41, the Hand Defendants admit them.

42. With respect to the allegations in paragraph 42, the Hand Defendants admit them.

43. With respect to the allegations in paragraph 43, the Hand Defendants admit them.

44. With respect to the allegations in paragraph 44, the Hand Defendants deny them. There is no "marital community" in New Hampshire.

45. With respect to the allegations in paragraph 45, the Hand Defendants admit that Cynthia Hand is the Secretary of Hand Technologies and a director.

46. With respect to the allegations in paragraph 46, the Hand Defendants deny them.

47. With respect to the allegations in paragraph 47, the Hand Defendants deny them.

48. With respect to the allegations in paragraph 48, Alan and Hand Technologies admit them.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

49. With respect to the allegations in paragraph 49, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

50. With respect to the allegations in paragraph 50, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore

she denies them.

## JURISDICTION AND VENUE

51.    With respect to the allegations in paragraph 51, the Hand Defendants deny them.

52.    With respect to the allegations in paragraph 52, the Hand Defendants deny them.

## ALLEGATIONS COMMON TO ALL COUNTS

### Background of Transpositional Modulation and TM Technologies

53.    With respect to the allegations in paragraph 53, the Hand Defendants deny them.

54.    With respect to the allegations in paragraph 54, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

55.    With respect to the allegations in paragraph 55, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

56.    With respect to the allegations in paragraph 56, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

57.    With respect to the allegations in paragraph 57, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

58.    With respect to the allegations in paragraph 58, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

59.    With respect to the allegations in paragraph 59, Alan and Hand Technologies admit them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

60. With respect to the allegations in paragraph 60, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

61. With respect to the allegations in paragraph 61, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

62. With respect to the allegations in paragraph 62, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

63. With respect to the allegations in paragraph 63, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

**Hand Technologies Execute The**
**Invention Assignment Agreement and NDA**

64. With respect to the allegations in paragraph 64, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

65. With respect to the allegations in paragraph 65, the Hand Defendants are without information to admit or deny the allegations, and therefore they are denied.

66. With respect to the allegations in paragraph 66, Alan and Hand Technologies admit them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

67. With respect to the allegations in paragraph 67, Alan and Hand Technologies admit them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

68. With respect to the allegations in paragraph 68, Alan and Hand Technologies admit that Alan traveled to Arizona and deny the balance of the allegations.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

69.   With respect to the allegations in paragraph 69, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

70.   With respect to the allegations in paragraph 70, Alan and Hand Technologies admit that Hand Technologies executed the noted agreement, and deny the balance of the allegations.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

71.   With respect to the allegations in paragraph 71, Alan and Hand Technologies admit that Hand Technologies executed the noted agreement, that the agreement speaks for itself, that it must be read in the context of the other agreements betwe4en the parties and their course of dealings, and deny the balance of the allegations.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

72.   With respect to the allegations in paragraph72, Alan and Hand Technologies deny them; TM has materially breached the agreement. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

73.   With respect to the allegations in paragraph 73, Alan and Hand Technologies deny them; TM has materially breached the agreement. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

74.   With respect to the allegations in paragraph 74, Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

75.   With respect to the allegations in paragraph 75, Alan and Hand Technologies deny them. The agreement speaks for itself. Cynthia is without information to admit or

1   deny the allegations, and therefore she denies them.

2   76.   With respect to the allegations in paragraph 76, Alan and Hand Technologies admit

3   that Hand Technologies signed the NDA, and deny the rest of the allegations.

4   Cynthia is without information to admit or deny the allegations, and therefore she

5   denies them.

6   77.   With respect to the allegations in paragraph 77, Alan and Hand Technologies deny

7   the allegations as stated, and state that the NDA speaks for itself. Cynthia is without

8   information to admit or deny the allegations, and therefore she denies them.

9   78.   With respect to the allegations in paragraph 78, Alan and Hand Technologies deny

10   the allegations as stated, and state that the NDA speaks for itself. Cynthia is without

11   information to admit or deny the allegations, and therefore she denies them.

12   79.   With respect to the allegations in paragraph 79, Alan and Hand Technologies admit

13   them. Cynthia is without information to admit or deny the allegations, and therefore

14   she denies them.

15   80.   With respect to the allegations in paragraph 80, Alan and Hand Technologies admit

16   that the agreements were incorporated into the Engineering Services Agreement, but

17   deny the balance of the allegations. Cynthia is without information to admit or deny

18   the allegations, and therefore she denies them.

19   81.   With respect to the allegations in paragraph 81, Alan and Hand Technologies admit

20   that the NDA speaks for itself, but deny the balance of the allegations. The NDA has

21   terminated by its terms. Cynthia is without information to admit or deny the

22   allegations, and therefore she denies them.

23   82.   With respect to the allegations in paragraph 82, Alan and Hand Technologies admit

that the NDA speaks for itself, but deny the balance of the allegations. The NDA has terminated by its terms. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

**The Company and Hand
Technologies Execute the Phase One Contract**

83.    With respect to the allegations in paragraph 83, Alan and Hand Technologies admit that the June 2015 contract speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

84.    With respect to the allegations in paragraph 84, Alan and Hand Technologies admit that the June 2015 contract speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

85.    With respect to the allegations in paragraph 85, Alan and Hand Technologies admit that the June 2015 contract speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

86.     With respect to the allegations in paragraph 86, Alan and Hand Technologies admit that the November 16, 2015 Report noted in paragraph 87 speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

87.    With respect to the allegations in paragraph 87, Alan and Hand Technologies admit that the November 16, 2015 Report noted in paragraph 87 speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the

allegations, and therefore she denies them.

88.   With respect to the allegations in paragraph 88, Alan and Hand Technologies deny the allegations as stated, and state that the March 2016 ESA speaks for itself. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

89.   With respect to the allegations in paragraph 89, Alan and Hand Technologies admit that Hand Technologies entered into the ESA, which speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

90.   With respect to the allegations in paragraph 90, Alan and Hand Technologies admit that Hand Technologies entered into the ESA, which speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

91.   With respect to the allegations in paragraph 91, Alan and Hand Technologies admit that Hand Technologies entered into the ESA, which speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

92.   With respect to the allegations in paragraph 92, Alan and Hand Technologies admit that Hand Technologies entered into the ESA, which speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

93.   With respect to the allegations in paragraph 93, Alan and Hand Technologies admit that Hand Technologies entered into the ESA, which speaks for itself, but deny the

1    balance of the allegations. Cynthia is without information to admit or deny the

2    allegations, and therefore she denies them.

3    94.    With respect to the allegations in paragraph 94, Alan and Hand Technologies admit

4    that Hand Technologies entered into the ESA, which speaks for itself, but deny the

5    balance of the allegations. Cynthia is without information to admit or deny the

6    allegations, and therefore she denies them.

7    95.    With respect to the allegations in paragraph 95, Alan and Hand Technologies admit

8    that Hand Technologies entered into the ESA, which speaks for itself, but deny the

9    balance of the allegations. Cynthia is without information to admit or deny the

10    allegations, and therefore she denies them.

11    96.    With respect to the allegations in paragraph 96, Alan and Hand Technologies admit

12    that Hand Technologies entered into the ESA, which speaks for itself, but deny the

13    balance of the allegations. Cynthia is without information to admit or deny the

14    allegations, and therefore she denies them.

15    97.    With respect to the allegations in paragraph 97, Alan and Hand Technologies admit

16    that Hand Technologies entered into the ESA, which speaks for itself, but deny the

17    balance of the allegations. Cynthia is without information to admit or deny the

18    allegations, and therefore she denies them.

19    98.    With respect to the allegations in paragraph 98, Alan and Hand Technologies admit

20    that Hand met the contract obligations and was paid, but deny the balance of the

21    allegations. Cynthia is without information to admit or deny the allegations, and

22    therefore she denies them.

23    99.    With respect to the allegations in paragraph 99, Alan and Hand Technologies admit

that Hand Technologies entered into the ESA, which speaks for itself, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

100. With respect to the allegations in paragraph 100, Alan and Hand Technologies admit that Hand Technologies met the contract obligations and was paid, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

101. With respect to the allegations in paragraph 101, the Hand Defendants are without information to admit or deny the allegations with respect to TM's receiving invoices and therefore they are denied, they admit payments were made and that Hand Technologies completed its contractual obligation. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

102. With respect to the allegations in paragraph 102, Alan and Hand Technologies are without information to admit or deny the allegations with respect to the originating bank, they admit payments were made and that Hand Technologies completed its contractual obligations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

103. With respect to the allegations in paragraph 103, Alan and Hand Technologies deny the allegations as stated, and refer to the full communications for a more accurate representation of the communications between the parties.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

104. With respect to the allegations in paragraph 104, Alan and Hand Technologies admit that in the discussions with TM, the estimated cost of this work which was beyond

the scope of the ESA, would cost $250,000 to $300,000, but deny the balance of the allegations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

105. With respect to the allegations in paragraph 105, Alan and Hand Technologies admit that Hand Technologies and TM agreed that Hand Technologies should undertake the additional efforts, and the price for that work, but deny the balance of the allegations, including but not limited to the inference that TM has accurately described the work agreed to. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

106. With respect to the allegations in paragraph 106, Alan and Hand Technologies are without information to admit or deny the allegations with respect to the originating bank, they admit the payment was made and that Hand Technologies completed its contractual obligations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

107. With respect to the allegations in paragraph 107, Alan and Hand Technologies deny the allegations as stated, and refer to the full communications for a more accurate representation of the communications between the parties.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

108. With respect to the allegations in paragraph 108, Alan and Hand Technologies deny them.  Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is

1    without information to admit or deny the allegations, and therefore she denies them.

2    109.   With respect to the allegations in paragraph 109, Alan and Hand Technologies deny

3    them.  Hand Technologies in its March 23, 2018, memorandum noted above,

4    explained in brief terms the history of the contractual relationship and work

5    performed, and what TM owed Hand Technologies under the ESA, as modified,

6    because TM's intellectual property as originally represented was useless.  Cynthia is

7    without information to admit or deny the allegations, and therefore she denies them.

8    110.   With respect to the allegations in paragraph 110, Alan and Hand Technologies deny

9    them.  Hand Technologies in its March 23, 2018, memorandum noted above,

10    explained in brief terms the history of the contractual relationship and work

11    performed, and what TM owed Hand Technologies under the ESA, as modified,

12    because TM's intellectual property as originally represented was useless.  Cynthia is

13    without information to admit or deny the allegations, and therefore she denies them.

14    111.   With respect to the allegations in paragraph 111, Alan and Hand Technologies deny

15    them.  Hand Technologies in its March 23, 2018, memorandum noted above,

16    explained in brief terms the history of the contractual relationship and work

17    performed, and what TM owed Hand Technologies under the ESA, as modified,

18    because TM's intellectual property as originally represented was useless.  Cynthia is

19    without information to admit or deny the allegations, and therefore she denies them.

20    112.   With respect to the allegations in paragraph 112, Alan and Hand Technologies deny

21    them.  Hand Technologies in its March 23, 2018, memorandum noted above,

22    explained in brief terms the history of the contractual relationship and work

23    performed, and what TM owed Hand Technologies under the ESA, as modified,

because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

113.   With respect to the allegations in paragraph 113, Alan and Hand Technologies deny them.  Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

114.   With respect to the allegations in paragraph 114, Alan and Hand Technologies deny them as stated, including but not limited to TM's misleading interpretation of the email.  Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

115.   With respect to the allegations in paragraph 115, Alan and Hand Technologies deny them.  Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

116.   With respect to the allegations in paragraph 116, Alan and Hand Technologies deny them.  Hand Technologies in its March 23, 2018, memorandum noted above,

1    explained in brief terms the history of the contractual relationship and work

2    performed, and what TM owed Hand Technologies under the ESA, as modified,

3    because TM's intellectual property as originally represented was useless.   Cynthia is

4    without information to admit or deny the allegations, and therefore she denies them.

5    117.   With respect to the allegations in paragraph 117, Alan and Hand Technologies deny

6    them.  Hand Technologies in its March 23, 2018, memorandum noted above,

7    explained in brief terms the history of the contractual relationship and work

8    performed, and what TM owed Hand Technologies under the ESA, as modified,

9    because TM's intellectual property as originally represented was useless.  TM's

10    misrepresents the purpose, meaning, and intent of the November 15, 2016,

11    memorandum as Hand Technologies did not agree to expand the scope of its work

12    without modification of the payment terms of the original ESA.  Cynthia is without

13    information to admit or deny the allegations, and therefore she denies them.

14    118.   With respect to the allegations in paragraph 118, Alan and Hand Technologies deny

15    them. Cynthia is without information to admit or deny the allegations, and therefore

16    she denies them.

17    119.   With respect to the allegations in paragraph 119, Alan and Hand Technologies deny

18    them. Cynthia is without information to admit or deny the allegations, and therefore

19    she denies them.

20    120.   With respect to the allegations in paragraph 120, Alan and Hand Technologies deny

21    them as stated. The email speaks for itself and must be read in the context of the

22    communications between the parties. Cynthia is without information to admit or

23    deny the allegations, and therefore she denies them.

121. With respect to the allegations in paragraph 121, Alan and Hand Technologies deny them. Two radios were delivered, but TM took one apart, apparently to try to reverse engineer it.  Hand Technologies reminded TM of past due amounts still owed to Hand Technologies for work completed yet not paid for.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

122. With respect to the allegations in paragraph 122, Alan and Hand Technologies deny them. Two radios were delivered, but TM took one apart, apparently to try to reverse engineer it.  Hand Technologies reminded TM of past due amounts still owed to Hand Technologies for work completed yet not paid for.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

123. With respect to the allegations in paragraph 123, Alan and Hand Technologies deny them. Two radios were delivered, but TM took one apart, apparently to try to reverse engineer it.  Hand Technologies reminded  TM  of past due amounts still owed to Hand Technologies for work completed yet not paid for.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

124. With respect to the allegations in paragraph 124, Alan and Hand Technologies deny them. Two radios were delivered, but TM took one apart, apparently to try to reverse engineer it.  Hand Technologies reminded TM  of past due amounts still owed to Hand Technologies for work completed yet not paid for.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

125. With respect to the allegations in paragraph 125, Alan and Hand Technologies deny them. Two radios were delivered, but TM took one apart, apparently to try to reverse engineer it.  Hand Technologies reminded TM of past due amounts still owed to

Hand Technologies for work completed yet not paid for.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

126.  With respect to the allegations in paragraph 126, Alan and Hand Technologies deny them.  Hand Technologies modified the 12bit design as promised and measured the results.   The design worked and provided 16bits/Hz of data.  Hand Technologies offered to deliver a radio unit to an independent laboratory for testing.  TM stated to Hand Technologies that TM was not interested because of the required increased antennae size and/or transmitter.  At this point, the $250,000 agreement was completed.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

127.  With respect to the allegations in paragraph 127, Alan and Hand Technologies deny them.  At this point in time, Hand Technologies was working on a new design to double the output (from 8 to 16bits/Hz of data), with the knowledge of TM, a project beyond the scope of  and outside of the original ESA and the $250,000 agreement.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

128.  With respect to the allegations in paragraph 128, Alan and Hand Technologies deny them as stated. At this point in time, Hand Technologies was working on a new design to double the output (from 8 to 16bits/Hz of data), with the knowledge and consent of TM, a project beyond the scope and outside of the original ESA and the $250,000 agreement. The email speaks for itself and must be read in the context of the communications between the parties. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

129.   With respect to the allegations in paragraph 129, Alan and Hand Technologies deny them as stated. At this point in time, Hand Technologies was working on a new design to double the output (from 8 to 16bits/Hz of data), with the knowledge and consent of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

130.   With respect to the allegations in paragraph 130, Alan and Hand Technologies deny them as stated. At this point in time, Hand Technologies was working on a new design to double the output (from 8 to 16bits/Hz of data), with the knowledge and consent of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

131.    With respect to the allegations in paragraph 131, Alan and Hand Technologies deny them as stated. At this point in time, Hand Technologies was working on a new design to double the output (from 8 to 16bits/Hz of data), with the knowledge and consent of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement.  As the original ESA noted, and as is common in design projects, the scope of work changes requiring changes to payment terms.  Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

132.   With respect to the allegations in paragraph 132, Alan and Hand Technologies deny

them.  Hand Technologies in its March 23, 2018, memorandum noted above,
explained in brief terms the history of the contractual relationship and work
performed, and what TM owed Hand Technologies under the ESA, as modified,
because TM's intellectual property as originally represented was useless.  Cynthia is
without information to admit or deny the allegations, and therefore she denies them.

133.   With respect to the allegations in paragraph 133, Alan and Hand Technologies deny
them.  Hand Technologies in its March 23, 2018, memorandum noted above,
explained in brief terms the history of the contractual relationship and work
performed, and what TM owed Hand Technologies under the ESA, as modified,
because TM's intellectual property as originally represented was useless.  Cynthia is
without information to admit or deny the allegations, and therefore she denies them.

134.   With respect to the allegations in paragraph 134, Alan and Hand Technologies deny
them.  Hand Technologies in its March 23, 2018, memorandum noted above,
explained in brief terms the history of the contractual relationship and work
performed, and what TM owed Hand Technologies under the ESA, as modified,
because TM's intellectual property as originally represented was useless.  Cynthia is
without information to admit or deny the allegations, and therefore she denies them.

135.   With respect to the allegations in paragraph 135, Alan and Hand Technologies deny
them.  Hand Technologies in its March 23, 2018, memorandum noted above,
explained in brief terms the history of the contractual relationship and work
performed, and what TM owed Hand Technologies under the ESA, as modified,
because TM's intellectual property as originally represented was useless.  Cynthia is
without information to admit or deny the allegations, and therefore she denies them.

136.   With respect to the allegations in paragraph 136, Alan and Hand Technologies deny them.  Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

137.   With respect to the allegations in paragraph 137, Alan and Hand Technologies deny them.  Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless. Hand Technologies informed TM of the hourly work by email of Alan Hand to TM in November 2016, stating, "As we discussed, developing a new concept and design for the Sepex was beyond the scope of the fixed price portion of the contract.  We completed and tested the TM version of Sepex in June.  So we have spent more than four months working to replace it.  Brian billed 279 hour so far for his part of the effort.  Harvey has billed 320 hours his part of that effort.  I have spent a significant part of my time on that effort also.  I will however only bill for 160 hours." See Document 2-3, page 41 of 53.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

138.   With respect to the allegations in paragraph 138, Alan and Hand Technologies deny them.  The ESA must be read in context of the parties' course of dealings. Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief

terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

139.   With respect to the allegations in paragraph 139, Alan and Hand Technologies deny them.  The ESA must be read in context of the parties' course of dealings. Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

140.   With respect to the allegations in paragraph 140, Alan and Hand Technologies deny them.  The ESA must be read in context of the parties' course of dealings. Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

141.   With respect to the allegations in paragraph 141, Alan and Hand Technologies deny them.  The ESA must be read in context of the parties' course of dealings. Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual

property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

142.   With respect to the allegations in paragraph 142, Alan and Hand Technologies deny them.  The ESA must be read in context of the parties' course of dealings. Hand Technologies in its March 23, 2018, memorandum noted above, explained in brief terms the history of the contractual relationship and work performed, and what TM owed Hand Technologies under the ESA, as modified, because TM's intellectual property as originally represented was useless.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

143.   With respect to the allegations in paragraph 143, Alan and Hand Technologies deny them as stated. Hand Technologies successfully created a new design to double the output (from 8 to 16bits/Hz of data), with the knowledge of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement.  As the original ESA noted, and as is common in design projects, the scope of work changes requiring changes to payment terms.  Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement.  Hand Technologies has offered to deliver the intellectual property upon payment.  Presently, TM has materially breached its duties to compensate Hand Technologies and., thus, has relieved Hand Technologies, its officers, directors, employees and subcontractors, from any obligations.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

144.   With respect to the allegations in paragraph 144, Alan and Hand Technologies admit

that Hand Technologies sent the May 3, 2018, email to Mr. Landberg and that Hand Technologies, did, indeed, create the unbalanced modulation from scratch.  Hand Technologies successfully created this new design to double the output (from 8 to 16bits/Hz of data), with the knowledge of TM, a project beyond the scope of  and outside of the original ESA and the $250,000 agreement.  As the original ESA noted, and as is common in design projects, the scope of work changes requiring changes to payment terms.  Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement.   Cynthia is without information to admit or deny the allegations, and therefore she denies them.

145.   With respect to the allegations in paragraph 145 Alan and Hand Technologies deny them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

146.   With respect to the allegations in paragraph 146 Alan and Hand Technologies deny them as stated. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

147.   With respect to the allegations in paragraph 147 Alan and Hand Technologies deny them as stated. Alan and Hand Technologies admit that Hand Technologies sent the May 3, 2018, email to Mr. Landberg and that Hand Technologies, did, indeed, create the unbalanced modulation from scratch.  Hand Technologies successfully created this new design to increase the output to 16bits/Hz of data, with the knowledge of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement.  As the original ESA noted, and as is common in design projects, the

scope of work changes requiring changes to payment terms. Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement. Presently, TM has materially breached its duties to compensate Hand Technologies and., thus, has relieved Hand Technologies, its officers, directors, employees and subcontractors, from any obligations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

148. With respect to the allegations in paragraph 148 Alan and Hand Technologies deny them as stated. Hand Technologies, did, indeed, create the unbalanced modulation from scratch. Hand Technologies successfully created this new design to increase the output to 16bits/Hz of data, with the knowledge and consent of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement. As the original ESA noted, and as is common in design projects, the scope of work changes requiring changes to payment terms. Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement. Presently, TM has materially breached its duties to compensate Hand Technologies and., thus, has relieved Hand Technologies, its officers, directors, employees and subcontractors, from any obligations. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

149. With respect to the allegations in paragraph 149 Alan and Hand Technologies deny them as stated. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

150.   With respect to the allegations in paragraph 150 Alan and Hand Technologies deny them as stated. Hand Technologies, did, indeed, create the unbalanced modulation from scratch.  Hand Technologies successfully created this new design to increase the output to 16bits/Hz of data, with the knowledge and consent of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement. As the original ESA noted, and as is common in design projects, the scope of work changes requiring changes to payment terms.  Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement. Presently, TM has materially breached its duties to compensate Hand Technologies and., thus, has relieved Hand Technologies, its officers, directors, employees and subcontractors, from any obligations.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

151.   With respect to the allegations in paragraph 151 Alan and Hand Technologies deny them as stated. Hand Technologies, did, indeed, create the unbalanced modulation from scratch.  Hand Technologies successfully created this new design to increase the output to 16bits/Hz of data, with the knowledge and consent of TM, a project beyond the scope of and outside of the original ESA and the $250,000 agreement. As the original ESA noted, and as is common in design projects, the scope of work changes requiring changes to payment terms.  Hand Technologies never agreed to conduct the additional research and development without additional compensation above that already earned under the ESA and the $250,000 agreement. Presently, TM has materially breached its duties to compensate Hand Technologies and., thus,

1   has relieved Hand Technologies, its officers, directors, employees and

2   subcontractors, from any obligations.  Cynthia is without information to admit or

3   deny the allegations, and therefore she denies them.

4   152.   With respect to the allegations in paragraph 152 Alan and Hand Technologies admit

5   the email was sent, that the email speaks for itself, and deny the balance of the

6   allegations and any inferences therefrom. Cynthia is without information to admit or

7   deny the allegations, and therefore she denies them.

8   153.   With respect to the allegations in paragraph 153 Alan and Hand Technologies admit

9   the email was sent, that the email speaks for itself, and deny the balance of the

10   allegations and any inferences therefrom. Cynthia is without information to admit or

11   deny the allegations, and therefore she denies them.

12   154.   With respect to the allegations in paragraph 154 Alan and Hand Technologies admit

13   the email was sent, that the email speaks for itself, and deny the balance of the

14   allegations and any inferences therefrom. Cynthia is without information to admit or

15   deny the allegations, and therefore she denies them.

16   155.   With respect to the allegations in paragraph 155, Alan and Hand Technologies admit

17   the email was sent, that the email speaks for itself, and deny the balance of the

18   allegations and any inferences therefrom. Cynthia is without information to admit or

19   deny the allegations, and therefore she denies them.

20   156.   With respect to the allegations in paragraph 156, Alan and Hand Technologies deny

21   them as stated. Hand Technologies, did, indeed, create the unbalanced modulation

22   from scratch.  Hand Technologies successfully created this new design to increase

23   the output to 16bits/Hz of data, with the knowledge of TM, a project beyond the

scope of and outside of the original ESA and the $250,000 agreement.  As the

original ESA noted, and as is common in design projects, the scope of work changes

requiring changes to payment terms.  Hand Technologies never agreed to conduct

the additional research and development without additional compensation above that

already earned under the ESA and the $250,000 agreement. Presently, TM has

materially breached its duties to compensate Hand Technologies and., thus, has

relieved Hand Technologies, its officers, directors, employees and subcontractors,

from any obligations.  Cynthia is without information to admit or deny the

allegations, and therefore she denies them.

157.   With respect to the allegations in paragraph 157, Alan and Hand Technologies deny

them as stated.  Alan and Hand Technologies admit that TM did loan Hand

Technologies equipment, which equipment was subject to Hand Technologies right

to purchase it at a set price.  Cynthia is without information to admit or deny the

allegations, and therefore she denies them.

158.   With respect to the allegations in paragraph 158, Alan and Hand Technologies deny

them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies

executed a bailment agreement, which agreement speaks for itself.  Cynthia is

without information to admit or deny the allegations, and therefore she denies them.

159.   With respect to the allegations in paragraph 159, Alan and Hand Technologies deny

them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies

executed a bailment agreement, which agreement speaks for itself.  Cynthia is

without information to admit or deny the allegations, and therefore she denies them.

160.   With respect to the allegations in paragraph 160, Alan and Hand Technologies deny

them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself, and that equipment was delivered to Hand Technologies.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

161.   With respect to the allegations in paragraph 161, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself.  The parties also agreed that Hand Technologies could purchase the equipment from TM for a set price. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

162.   With respect to the allegations in paragraph 162, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

163.   With respect to the allegations in paragraph 163, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

164.   With respect to the allegations in paragraph 164, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself, and that equipment was delivered to Hand Technologies.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

165.    With respect to the allegations in paragraph 165, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

166.    With respect to the allegations in paragraph 166, Alan and Hand Technologies deny them as stated.  Alan and Hand Technologies admit that TM and Hand Technologies executed a bailment agreement, which agreement speaks for itself.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

167.    With respect to the allegations in paragraph 167, Alan and Hand Technologies deny them as stated.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

168.    With respect to the allegations in paragraph 168, Alan and Hand Technologies deny them as stated.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

169.    With respect to the allegations in paragraph 169, Alan and Hand Technologies deny them as stated.  Cynthia is without information to admit or deny the allegations, and therefore she denies them.

170.    With respect to the allegations in paragraph 170, the Hand Defendants deny them.

171.    With respect to the allegations in paragraph 171, the Hand Defendants deny them.

172.    With respect to the allegations in paragraph 172, the Hand Defendants deny them.

173.    With respect to the allegations in paragraph 173, the Hand Defendants deny them.

174.    With respect to the allegations in paragraph 174, the Hand Defendants deny them.

175.    With respect to the allegations in paragraph 175, the Hand Defendants deny them.

176.   With respect to the allegations in paragraph 176, the Hand Defendants deny them.

177.   With respect to the allegations in paragraph 177, the Hand Defendants deny them.

## COUNT I

## FRAUD

178.   The Hand Defendants repeat and reallege all previous responses.

179.   With respect to the allegations in paragraph 179, the Hand Defendants deny them.

180.   With respect to the allegations in paragraph 180, the Hand Defendants deny them.

181.   With respect to the allegations in paragraph 181, the Hand Defendants deny them.

182.   With respect to the allegations in paragraph 182, the Hand Defendants deny them.

183.   With respect to the allegations in paragraph 183, the Hand Defendants deny them.

184.   With respect to the allegations in paragraph 184, the Hand Defendants deny them.

185.   With respect to the allegations in paragraph 185, the Hand Defendants deny them.

186.   With respect to the allegations in paragraph 186, the Hand Defendants deny them.

Denies

## COUNT II

## BREACH OF CONTRACT – PHASE TWO CONTRACT

187.   The Hand Defendants repeat and reallege all previous responses.

188.   With respect to the allegations in paragraph 188, the Hand Defendants deny them.

TM materially breached the contracts between it and Hand Technologies.

189.   With respect to the allegations in paragraph 189, the Hand Defendants deny them.

190.   With respect to the allegations in paragraph 190, the Hand Defendants deny them.

191.   With respect to the allegations in paragraph 191, the Hand Defendants deny them.

192.   With respect to the allegations in paragraph 192, the Hand Defendants deny them.

193.   With respect to the allegations in paragraph 193, the Hand Defendants deny them.

194.   With respect to the allegations in paragraph 194, the Hand Defendants deny them.

## COUNT III

## BREACH OF CONTRACT - $250,000 CONTRACT ADDITION

195.   The Hand Defendants repeat and reallege all previous responses.

196.   With respect to the allegations in paragraph 196, the Hand Defendants admit them and state that the agreement has been completed and fulfilled.

197.   With respect to the allegations in paragraph 197, the Hand Defendants deny them as stated.   The Hand Defendants admit that the agreement has been completed and fulfilled.

198.   With respect to the allegations in paragraph 198, the Hand Defendants deny them.

199.   With respect to the allegations in paragraph 199, the Hand Defendants deny them.

200.   With respect to the allegations in paragraph 200, the Hand Defendants deny them.

201.   With respect to the allegations in paragraph 201, the Hand Defendants deny them.

## COUNT IV

## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

202.   The Hand Defendants repeat and reallege all previous responses.

203.    With respect to the allegations in paragraph 203, the Hand Defendants deny them.

204.   With respect to the allegations in paragraph 204, the Hand Defendants deny them.

205.   With respect to the allegations in paragraph 205, the Hand Defendants deny them.

206.   With respect to the allegations in paragraph 206, the Hand Defendants deny them.

207.   With respect to the allegations in paragraph 207, the Hand Defendants deny them.

208.   With respect to the allegations in paragraph 208, the Hand Defendants deny them.

## COUNT V

## MISAPPROPRIATION OF TRADE SECRET

209.   The Hand Defendants repeat and reallege all previous responses.

210.   With respect to the allegations in paragraph 210, the Hand Defendants deny them.

211.   With respect to the allegations in paragraph 211, the Hand Defendants deny them.

212.   With respect to the allegations in paragraph 212, the Hand Defendants deny them.

213.   With respect to the allegations in paragraph 213, the Hand Defendants deny them.

214.   With respect to the allegations in paragraph 214, the Hand Defendants deny them.

215.   With respect to the allegations in paragraph 215, the Hand Defendants deny them.

216.   With respect to the allegations in paragraph 216, the Hand Defendants deny them.

217.   With respect to the allegations in paragraph 217, the Hand Defendants deny them.

218.   With respect to the allegations in paragraph 218, the Hand Defendants deny them.

## COUNT VI

## MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

219.   The Hand Defendants repeat and reallege all previous responses.

220.    With respect to the allegations in paragraph 220, the Hand Defendants deny them.

221.   With respect to the allegations in paragraph 221, the Hand Defendants deny them.

222.   With respect to the allegations in paragraph 222, the Hand Defendants deny them.

223.   With respect to the allegations in paragraph 223, the Hand Defendants deny them.

224.   With respect to the allegations in paragraph 224, the Hand Defendants deny them.

225.   With respect to the allegations in paragraph 225, the Hand Defendants deny them.

226.   With respect to the allegations in paragraph 226, the Hand Defendants deny them.

227.   With respect to the allegations in paragraph 227, the Hand Defendants deny them.

228. With respect to the allegations in paragraph 228, the Hand Defendants deny them.

**COUNT VII**

**REPLEVIN**

229. The Hand Defendants repeat and reallege all previous responses.

230. With respect to the allegations in paragraph 230, Alan and Hand Technologies admit them subject to Hand Technologies' rights to purchase them and/or to be paid by TM for work done with or on the equipment before return to TM. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

231. With respect to the allegations in paragraph 231, Alan and Hand Technologies deny them, as the equipment was delivered to Hand Technologies, through its agent, Alan Hand. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

232. With respect to the allegations in paragraph 232, Alan and Hand Technologies admit them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

233. With respect to the allegations in paragraph 233, Alan and Hand Technologies deny them.

234. With respect to the allegations in paragraph 234, the Hand Defendants deny them.

235. With respect to the allegations in paragraph 235, the Hand Defendants deny them.

236. With respect to the allegations in paragraph 236, the Hand Defendants deny them.

**COUNT VIII**

**CONVERSION**

237. The Hand Defendants repeat and reallege all previous responses.

238. With respect to the allegations in paragraph 238, Alan and Hand Technologies admit them subject to Hand Technologies' rights to purchase them and/or to be paid by TM for work done with or on the equipment before return to TM. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

239. With respect to the allegations in paragraph 239, Alan and Hand Technologies deny them, as the equipment was delivered to Hand Technologies, through its agent, Alan Hand. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

240. With respect to the allegations in paragraph 240, Alan and Hand Technologies admit them. Cynthia is without information to admit or deny the allegations, and therefore she denies them.

241. With respect to the allegations in paragraph 241, Alan and Hand Technologies deny them.

242. With respect to the allegations in paragraph 242, the Hand Defendants deny them.

243. With respect to the allegations in paragraph 243, the Hand Defendants deny them.

244. With respect to the allegations in paragraph 244, the Hand Defendants deny them.

**<u>Affirmative Defenses</u>**

1. The court lacks jurisdiction over each of the Hand Defendants.

2. The Plaintiff fails to state a claim for which relief can be granted.

3. The Plaintiff's claims are barred by the applicable statute of limitations.

4. The Plaintiff's claims fail for lack of consideration.

5. The Plaintiff's claims fail due to the Plaintiff's material breaches of contract.

6. The Plaintiff's claims fail due to waiver.

7.        The Plaintiff's claims fail due to estoppel.

8.        The Plaintiff's claims fail due to accord and satisfaction.

9.        The Plaintiff's claims fail due to its unclean hands.

10.       The Plaintiff's claims fail due to its inequitable conduct.

11.       The Plaintiff's claims fail due to its failure to pay for services rendered.

12.       A bailee has the right to withhold return of bailed goods when the bailor fails to pay for services.

13.       The Plaintiff's claims against Alan and Cynthia fail due to the doctrine of corporate responsibility of Hand Technologies which shields them from personal liability for the corporation's alleged liability.

14.       The Plaintiff's claims fail for failure to plead fraud with requisite particularity.

15.       The Plaintiff's claims fail because it assumed the risk that technological developments may not succeed.

16.       The Plaintiff's claims fail due to its contributory negligence.

17.       The Plaintiff's claims fail due its subjecting the Hand Defendants to duress by refusing to pay as agreed.

18.       The Plaintiff's claims fail due to its fraud.

19.       The Plaintiff's claims fail due to laches.

20.       The Plaintiff's claims fail due its granting a license to Hand Technology to use the equipment and its intellectual property.

## **Counterclaims**

NOW COMES the Hand Defendants, and by way of counterclaim against TM Technologies, LLC, and new Counterclaim Defendants TerraNova Capital Partners, Inc.,

and TerraNova Capital Equities, Inc., and state as follows:

1. The Hand Defendants repeat, reallege, and incorporate in these counterclaims all previous allegations and responses included in its answer to the Amended Complaint.

2. TerraNova Capital Partners, Inc. is well-respected investment and merchant banking firm with offices located at 733 Third Avenue, New York, New York.

3. TerraNova Capital Partners, Inc. provides investment banking services through its wholly-owned subsidiary, TerraNova Capital Equities, Inc., a FINRA-registered broker-dealer.  Hereinafter, Counterclaim Defendants TerraNova Capital Partners, Inc. and TerraNova Capital Equities, Inc. will be referred to as "TerraNova."

4. TerraNova has a global reach focused on investments with social impact, specializing in providing its clients highly-customized, professional and cost-effective investment banking services.

5. John Steinmetz co-founded TerraNova Capital Partners, Inc. in 1999. He is the Chairman of TerraNova Capital Partners and the President of TerraNova Capital Equities.

6. Steinmetz runs the TerraNova's Investment Banking business and is a partner in the firm's Merchant Banking operations.  Steinmetz has more than twenty-five years of experience in investment banking and venture capital having completed in excess of fifty transactions representing over $500 million in capital for both public and private growth companies. He is a seasoned investment banker and serial entrepreneur.

7. Steinmetz is directly involved in TM Technologies, raising money for TM, sitting on its board of directors, representing it and many of its investors, and having a critical

1    role in the leadership and direction of the company.

2    8.    Steinmetz is also related to Alan and Cynthia Hand, being the biological cousin of

3          Cynthia Hand.   Alan Hand knew Steinmetz for decades well before Hand

4          Technologies and TM began working with one another, and trusted him and his

5          reputation and his company.

6    9.    Hand Technologies agreed to translate a TM Technologies design from its obsolete

7          analog technology to a modern digital design.  Hand Technologies agreed to supply

8          the converted design as an IP core (or IP block).

9    10.   In modern electronic design a semiconductor intellectual property core, IP core, or IP

10         block, is a reusable unit of logic, cell, or integrated circuit (commonly called a

11         "chip") layout design that is the intellectual property of one party.

12   11.   IP cores may be licensed to another party or can be owned and used by a single party

13         alone.

14   12.   The term IP cores is derived from the licensing of the patent and/or source code

15         copyright that exist in the design.

16   13.   IP cores can be used as building blocks within application-specific integrated circuit

17         (ASIC) designs or field-programmable gate array (FPGA) logic designs.  IP cores are

18         supplied in the form of a computer file or code.

19   14.   Hand Technologies estimated that the job for TM under the ESA would take six

20         months and charged a fee of two million dollars.  Provision was also made for work

21         to be performed on an hourly basis.  It is common for IP development projects to

22         change in scope and cost over time.

23   15.   Had the TM Technologies design operated as TM had represented, the job would

1    have been completed in the six months that were estimated.

2    16.   Hand Technologies, Inc. translated the TM Technologies design into an IP block.

3    17.   During testing, Hand Technologies discovered that one key section of the TM

4    Technologies' design did not function as represented, both verbally and in TM's

5    written technical specifications.

6    18.   Hand Technologies, Inc. notified TM Technologies of the error and requested a

7    correction.

8    19.   No one at TM Technologies was able to provide a correction.

9    20.   After Hand Technologies pointed out lack of functionality, Rick Gerdes, TM

10    Technologies chief scientist, discovered that a part of TM's design had not made it

11    into the patents.

12    21.   Analysis of the newly available missing part of the design showed that the TM

13    Technologies design would not provide a meaningful improvement over modern

14    state-of-the-art waveforms.

15    22.   Hand Technologies, Inc. informed TM Technologies CEO, Daniel Hodges, that the

16    project was at a dead end.

17    23.   TM Technologies had no ability to develop a solution.

18    24.   TM's Hodges pressed Hand Technologies to come up with a method to make TM

19    modulation work.

20    25.   The request from TM for Hand Technologies to resolve its design flaws transformed

21    the project from a straightforward project to create an IP core to an open ended

22    research and development effort to invent a replacement concept and design.

23    26.   These modifications to fix the design flaws were  outside the scope of  ESA's fixed

priced contract.  Indeed, the ESA anticipated that aspects of the project would be paid on an hourly basis.  ESA, Exhibit C (Doc. 2-3 at page 19-20 of 53).

27.     Hand Technologies agreed to look at the problem to see if they could identify a solution to help save TM Technologies' company.

28.     In order to solve TM's problem, Hand Technologies researched how do build a TM demodulator.

29.     Hand Technologies studied the nature of transparency and developed a working theory of how transparency worked.

30.     Hand Technologies built simulations of candidate transmit and receive designs.

31.     Despite their early optimism, the task of inventing a replacement concept and hardware design proved elusive.

32.     TM Technologies management became impatient with Hand Technologies' progress.

33.     TM withheld payment from Hand Technologies was threatened it with lawsuits, ignoring that the projected had shifted from that had been contracted for in the ESA to finding a replacement for TM's failed design.

34.     Eventually Hand Technologies made it work.

35.     A total additional time period of seven months was required to complete the project.

36.      Harvey Woodsum of Hand Technologies was granted a patent (patent number 9882764) for the design.  The patent is assigned to TM Technologies since it was derivative from TM's intellectual property.

37.     By February 2017, Hand Technologies provided a working radio for testing at an independent lab (Rincon) that met the target of 4bits of TM combined with 8bits of QAM.

38.     Transparency was working in a radio with excellent performance.

39.     All other contract items were provided to TM Technologies on a thumb drive on March 2017. At this point in time the extended work to fix the flaws in TM's design was complete.

40.     It is common for customers to want to add items to a fixed price contract. The proposed changes are discussed and a price is attached.

41.     In November 2016, TM's Powell presented a list of items that TM Technologies wanted Hand Technologies to provide.

42.     The list of changes included some items that would cause a significant change in project scope.

43.     Hand Technologies told Powell that the proposed changes would be very expensive. Powell insisted that Hand Technologies first acknowledge and agree on what the changes were to be and the proposed timetable for delivery of those changes, before discussing the additional cost of those changes.

44.     Powell presented a schedule of changes to Hand Technologies, with a place for Hand Technologies to initial to acknowledge agreement on what the changes were. Powell required that Hand Technologies return the schedule with the acknowledgement, before discussing costs.

45.     After Hand Technologies complied with Powell's demands, however, Power informed Hand Technologies that TM would not pay any additional sums for the changes, with the excuse that Hand Technologies had "overcharged" TM on the fixed price contract.

46.     Hand Technologies informed Powell that Hand Technologies rejected the notion that

47

the proposed changes were covered under the fixed price contract. Alan Hand informed TM's CEO Daniel Hodges that Hand Technologies had no interest in working with Powell, who had proposed millions of dollars' worth of changes without compensation to Hand Technologies, and thus there was no agreement on the price for the additional work at that time.

47. In that conversation with Alan, Hodges did not dispute that there was no agreement on the additional work. Instead, Hodges said Hand Technologies would work with him and not with Powell.

48. Months later, however, Hand Technologies was surprised to find out that Hodges later claimed that Hand Technologies had agreed to a contract modification (which Plaintiff refers to as November 2016 Amendment in its amended complaint) using the list of proposed changes.

49. In the March 2016 time frame, in a conversation with TM Technologies' CEO, Dan Hodges, Hand Technologies raised the possibility of increasing the number of bits by sending both amplitude and time shift in the TM portion of the waveform.

50. This would provide a 100% improvement in data rate as compared to the unit being delivered under contract that provided a 50% improvement.

51. Hand Technologies explained that it did not understand the physics of the modification and that there was a good chance that it might not have a useful level of performance. Hand Technologies represented to TM, and TM understood, that it was an experiment and that Hand Technologies did not know if the modifications would provide useful performance.

52. Hand Technologies made it clear to TM that if the modification did not perform well,

1    it was a dead end.  Alan Hand sent an email to Mike Powell explaining the same.

53.   TM wanted us to pursue it and offered Hand Technologies $250,000 to try it, which TM prepaid.

54.   Hand Technologies modified the 12bit design as promised and measured the results.

55.    The design worked and provided 16bits/Hz of data.

56.   The required signal-to-noise ratio (SNR), however, increased by 20dB.   Which means that bigger antennas or much higher transmit power would be required.

57.   Hand Technologies offered TM to deliver a radio unit to the independent laboratory for testing.  TM declined.  The $250,000 contract was complete at this point.

58.   Despite successful completion of the 12bit version that proved and demonstrated that transparency could be implemented in a modern SDR radio, it was not enough.

59.   TM Technologies' needs had evolved from the original contractual effort to prove that TM Modulation worked.   TM Technologies now needed 16bit/Hz for the customers and market opportunities they had identified.

60.   TM pressed Hand Technologies to develop a way to double the data rate to 16 bits/Hz, without an increase in required SNR.

61.   Hand Technologies undertook those efforts, after promises were made, agreed to, and payment provisions made as described below concerning the outstanding balance TM  owed Hand Technologies of just under $600,000 under the original ESA;  Hand Technologies also knew it had a potential client in TM if successful, and if not TM, other companies would see the market value in the product.

62.   Hand Technologies undertook those development efforts, and designed a concept called "unbalanced side lobe modulation."  This waveform does not in any way

derive from TM patents or intellectual property.  The unbalanced side lobe modulation is not derived from TM's intellectual property and was not produced under any contract with or for TM.

63. During its relationship with Hand Technologies, TM had and has been "a slow pay company."  Multiple phone calls and sometimes warnings of work stoppage by Hand Technologies were required for most payments.  TM consistently represented to Hand Technologies that it suffered cash shortages and had problems making its own payroll.

64. Upon information and belief, during the period when Hand Technologies was working with TM, including the period of time when Hand Technologies was developing Unbalanced Sidelobe Modulation, TerraNova raised money for TM Technologies in the range of eleven to thirteen million dollars.

65. TerraNova is well-respected investment and merchant banking firm with offices located at 733 Third Avenue, New York, New York.

66. TerraNova has a global reach focused on investments with social impact, specializing in providing its clients highly-customized, professional and cost-effective investment banking services.

67. Steinmetz runs the TerraNova's Investment Banking business and is a partner in the firm's Merchant Banking operations.  Steinmetz has more than twenty-five years of experience in investment banking and venture capital having completed in excess of fifty transactions representing over $500 million in capital for both public and private growth companies. He is a seasoned investment banker and serial entrepreneur.

68. Steinmetz is directly involved in TM Technologies, raising money for TM, sitting on

its board of directors, and having a critical role in the leadership and direction of the company.

69.   Based on Steinmetz's experience, reputation, and the decades long familial relationship between Steinmetz and Alan and Cynthia Hand, Alan trusted Steinmetz. Alan and Hand Technologies were comforted by and relied upon Steinmetz and TerraNova's personal involvement with and support of TM that TM would deal honestly and fairly with Hand Technologies.

70.   Steinmetz and TerraNova's involvement in TM was especially important to the Hand Defendants because TM was a start-up company, and a slow paying client.

71.   Hand Technologies took its concerns to Steinmetz at TerraNova and as a TM board member about TM's refusal to pay the nearly $600,000 owed after completing the original work on phase two of the contract to Steinmetz.  Steinmetz informed Hand Technologies by a telephone call with Alan that TM Technologies was unwilling to make any payments to Hand Technologies until Unbalanced Sidelobe Modulation was proven.  See Exhibit L to the TM Complaint, Document 1-2.

72.   Hand Technologies informed TM Technologies, through Steinmetz, that it was stopping all work on Unbalanced Sidelobe Modulation until past due amounts were resolved. See Exhibit L to the TM Complaint, Document 1-2.

73.   On behalf of TM and TerraNova, Steinmetz negotiated an agreement with Hand Technologies to continue the development of Unbalanced Sidelobe Modulation. Steinmetz agreed to hold in escrow at Terra Nova $500,000 of TM's funds that TerraNova had raised for TM until Hand Technologies proved that Unbalanced Sidelobe Modulation was working. See Exhibit L to the TM Complaint, Document

1-2.

74.    TM, TerraNova, Steinmetz and Hand Technologies agreed that the wireless research and development company Rincon would test and certify successful completion of Unbalanced Sidelobe Modulation.    TM, TerraNova, Steinmetz and Hand Technologies agreed that immediately upon certification by Rincon that Unbalanced Side Modulation worked, Steinmetz and TerraNova would release the $500,000 to Hand Technologies as a payment toward the outstanding $591,850 past due from the phase two contract.

75.    TM, TerraNova, Steinmetz and Hand Technologies also agreed that that cost associated with Unbalanced Sidelobe Modulation would be negotiated after completion of the project since TM Technologies was not willing to commit funds prior to proof that Unbalanced Sidelobe Modulation worked.

76.    Steinmetz represented to Hand Technologies by direct verbal communications that the funds of TM held in the TerraNova escrow account was the same as and secure as an escrow account in a commercial bank.    Steinmetz further informed Hand Technologies that TerraNova was an investment bank operating under SEC rules and regulations, providing yet more assurance to Hand Technologies that the funds would remain available as agreed.    Steinmetz promised Hand Technologies that he would not allow TM access to those funds and stated to Hand Technologies that it was not possible for TM Technologies to gain access to the money without going to court, and thus Hand Technologies' interests were protected.

77.    Hand Technologies relied on these assurances and promises made by TM, TerraNova, and Steinmetz, and dedicated much time, effort, money, and risk in

1     working on Unbalanced Sidelobe Modulation.

2   78.    As Hand Technologies' design and development of Unbalanced Sidelobe

3     Modulation was coming to a conclusion, John Steinmetz informed Hand

4     Technologies that he had released the $500,000 to TM Technologies. Steinmetz told

5     Alan Hand that the funds had remained in the escrow account until "TM had to have

6     the money".

7   79.    Either Steinmetz knew at the time he represented to Hand Technologies that he and

8     TerraNova would keep the $500,000 in escrow for Hand Technologies' benefit that

9     the representations were false and he had no such intention, but that he made the

10     promises in order to induce Hand Technologies to continue working on the

11     Unbalanced Sidelobe Modulation, or that he made those promises without a good

12     faith basis that he could keep those promises.

13   80.    In any event, Steinmetz knew Alan, Cynthia, and Hand Technologies trusted him.

14   81.    Further, TM knew Steinmetz had Alan and Hand Technologies' trust and could use

15     that trust to convince Hand Technologies to continue to work despite TM's failure to

16     pay as agreed under the ESA.

17   82.    TM understood that Hand Technologies was working to meet TM's stated desire to

18     double the data rate without an increase in SNR.

19   83.    Hand Technologies succeeded in designing a radio doubling the output (from 8 to

20     16bits/Hz) without an increase in SNR.

21   84.    An independent laboratory has confirmed Hand Technologies' results.

22   85.    TM has trumpeted Hand Technologies' success as its own in its press releases.

23   86.    Despite Hand Technologies success, claims it owns the new technology and has no

1    obligation to pay for it.

2  87.  Hand Technologies and TM agreed that with respect to the TM equipment provided

3       to Hand Technologies, Hand had the right to purchase the equipment for $10,000.00

4       at the end of the project if successful.

5  88.  Hand continues to hold that right.

6  89.  Moreover, TM has unjustifiable refused to pay Hand Technologies the $591,850.00

7       owed under the original ESA, as explained in the March 23, 2018 memorandum and

8       Appendix E attached thereto.

9  90.  TM has unjustifiably demanded that Hand Technologies turn over to it the

10      unbalanced side lobe modulation without any compensation.

11 **Count I:  Breach of Contract, Original Engineering Services Agreement**

12 91.  The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs

13      in its answer and counterclaims.

14 92.  Hand Technologies successfully completed and performed its obligations under the

15      Original Engineering Services Agreement (ESA).

16 93.  Without justification, TM has materially breached its agreements by refusing to pay

17      Hand Technologies the moneys due to it under the Original ESA.

18 94.  TM has refused to pay Hand Technologies the amounts due to it under the Original

19      ESA in an amount no less than $591,850.00, plus interest, costs, and attorney fees as

20      provided by agreement and law.

21 95.  Hand Technologies respectfully requests that the court enter judgment against TM

22      Technologies to compensate it for its consequential damages, expenses, fees, or other

23      items and losses caused by its breach of contract.

96.    Enter declaratory relief such that due to Plaintiff's material breaches of contract, the Hand Defendants are relieved of any obligations to TM Technologies.

**[Count II Dismissed per Court Order]** ~~Count II:  Unjust Enrichment Relating to First Engineering Services Agreement~~

~~97.    The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.~~

~~98.    Hand Technologies successfully completed and performed its obligations under the Original Engineering Services Agreement (ESA).~~

~~99.    Despite that, TM has asserted, essentially, that it and Hand Technologies never had a true meeting of the minds, as the allegations set forth in its Amended Complaint describe facts totally at odds with truth of the relationship.~~

~~100.   Despite this failure of understanding, TM has benefited from the goods and services provided to it by Hand Technologies under the Engineering Services Agreement and the relationship that unfolded thereunder, such that it would be inequitable for TM to retain those benefits without paying for them.~~

~~101.   Without justification, TM has refused to compensate Hand Technologies for the reasonable cost and value of the services provided to it by Hand Technologies under the Original ESA.~~

~~102.   Hand Technologies respectfully requests that the court enter judgment against TM Technologies to compensate it for the reasonable value of its services provided to TM and the benefit bestowed thereupon and for other damages, expenses, fees, or other items and losses caused by its inequitable conduct.~~

**Count III:  Promissory and Equitable Estoppel Relating to First Engineering Services Agreement**

103. The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.

104. Hand Technologies discovered during its performance under the First ESA that TM's patents were useless, communicated that to TM, ands agreed with TM to find a solution to that deficiency, all outside the original work scope of the original ESA.

105. Based on TM's representations that it wanted Hand Technologies to find a solution outside the original work scope, and on the understanding that the cost of those additional services would be borne by TM above and beyond the fixed price of the Original ESA, Hand Technologies successfully completed and performed its obligations under the Original Engineering Services Agreement (ESA), as expanded.

106. Hand Technologies reasonably relied on the representations made by TM that it authorized Hand Technologies to undertake these additional duties.

107. Furthermore, TM, through TerraNova its investment banker and its board member and TerraNova's chairman and president John Steinmetz, induced Hand Technologies to work without pay on developing the Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000 of TM's funds in escrow for the benefit of Hand Technologies as payment toward the outstanding $591,850 owed under the ESA.

108. Hand Technologies relied on those promises.  The reliance was reasonable because Steinmetz is and was a reputable investment banker and businessman, raised millions of dollars for TM, sits on TM's board, and was personally known by and trusted by Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the Hands for decades.

109.   TM has benefited from the goods and services provided to it by Hand Technologies under the Engineering Services Agreement, as expanded, such that it would be inequitable for TM to retain those benefits without paying for them.

110.   Without justification, TM has refused to compensate Hand Technologies for the reasonable cost and value of the services provided to it by Hand Technologies under the Original ESA, as expanded, which result is inequitable.

111.   Hand Technologies respectfully requests that the court enter judgment against TM Technologies to compensate it for the reasonable value of its services provided to TM and the benefit bestowed thereupon and for other damages, expenses, fees, or other items and losses caused by its inequitable conduct.

**Count IV : Negligent Misrepresentation**

112.   The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.

113.   Hand Technologies discovered during its performance under the First ESA that TM's patents were useless, communicated that to TM, ands agreed with TM to find a solution to that deficiency, all outside the original work scope of the original ESA.

[Paragraphs 114, 115, 116 deleted] ~~Based on TM's representations that it wanted Hand Technologies to find a solution outside the original work scope, and on the understanding that the cost of those additional services would be borne by TM above and beyond the fixed price of the Original ESA, Hand Technologies successfully completed and performed its obligations under the Original Engineering Services Agreement (ESA), as expanded.~~

~~114.   Hand Technologies reasonably relied on the representations made by TM that it~~

1      ~~authorized Hand Technologies to undertake these additional duties.~~

2      ~~115.   TM negligently mispresented that it would pay for the services undertaken by Hand~~

3      ~~Technologies under the Engineering Services Agreement, as expanded.~~

4      ~~116.   Furthermore, TM, through TerraNova its investment banker and its board member~~

5      ~~John Steinmetz, induced Hand Technologies to work without pay on developing the~~

6      ~~Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000~~

7      ~~of TM's funds in escrow for the benefit of Hand Technologies as payment toward the~~

8      ~~outstanding amounts owed under the ESA.~~

9      117.   Hand Technologies relied on those promises.  The reliance was reasonable because

10     Steinmetz is and was a reputable investment banker and businessman, raised millions

11     of dollars for TM, sat on TM's board, and was personally known by and trusted by

12     Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the

13     Hands for decades.

14     118.   As Hand Technologies' design and development of Unbalanced Sidelobe Modulation

15     was coming to a conclusion, John Steinmetz informed Hand Technologies that he

16     had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the

17     funds had remained in the escrow account until "TM had to have the money".

18     119.   Without justification, TM has refused to compensate Hand Technologies for the

19     reasonable cost and value of the services provided to it by Hand Technologies under

20     the Original ESA, as expanded, which has materially harmed Hand Technologies.

21     120.   Without justification and in breach of his and TerraNova's and TM's promises,

22     Steinmetz and TerraNova released to TM the $500,000 held in escrow for the benefit

23     of Hand Technologies, breaching his, its, and their fiduciary duties as escrow agents.

121.   Hand Technologies respectfully requests that the court enter judgment against TM Technologies and TerraNova   to compensate it for the damages caused by its misrepresentations, including but not limited to the reasonable value of its services provided to TM and the benefit bestowed thereupon and for other damages, expenses, fees, or other items and losses caused by its and their conduct.

**[Count V Dismissed per Court order]** ~~Count V:  Intentional Misrepresentation~~

~~122.   The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.~~

~~123.   Hand Technologies discovered during its performance under the First ESA that TM's patents were useless, communicated that to TM, ands agreed with TM to find a solution to that deficiency, all outside the original work scope of the original ESA.~~

~~124.   Based on TM's representations that it wanted Hand Technologies to find a solution outside the original work scope, and on the understanding that the cost of those additional services would be borne by TM above and beyond the fixed price of the Original ESA, Hand Technologies successfully completed and performed its obligations under the Original Engineering Services Agreement (ESA), as expanded.~~

~~125.   Hand Technologies reasonably relied on the representations made by TM that it authorized Hand Technologies to undertake these additional duties.~~

~~126.   TM intentionally mispresented that it would pay for the services undertaken by Hand Technologies under the Engineering Services Agreement, as expanded.~~

~~127.   Without justification, TM has refused to compensate Hand Technologies for the reasonable cost and value of the services provided to it by Hand Technologies under the Original ESA, as expanded, which has materially harmed Hand Technologies.~~

128. Furthermore, TM, through its investment banker and board member John Steinmetz, induced Hand Technologies to work without pay on developing the Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000 of TM's funds in escrow for the benefit of Hand Technologies as payment toward the outstanding amounts owed under the ESA.

129. Hand Technologies relied on those promises.  The reliance was reasonable because Steinmetz is and was a reputable investment banker and businessman, raised millions of dollars for TM, sat on TM's board, and was personally known by and trusted by Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the Hands for decades.

130. As Hand Technologies' design and development of Unbalanced Sidelobe Modulation was coming to a conclusion, John Steinmetz informed Hand Technologies that he had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the funds had remained in the escrow account until "TM had to have the money".

131. Without justification and in breach of his and TerraNova's and TM's promises, Steinmetz and TerraNova released to TM the $500,000 held in escrow for the benefit of Hand Technologies, breaching his, its, and their fiduciary duties as escrow agents.

132. Hand Technologies respectfully requests that the court enter judgment against TM Technologies and TerraNova, to compensate it for the damages caused by its misrepresentations, including but not limited to the reasonable value of its services provided to TM and the benefit bestowed thereupon and for other damages, expenses, fees, or other items and losses caused by its, their and his conduct, including but not limited to punitive damages.

**Count VI:  Interference with Prospective Advantage**

133.    The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.

134.    Hand Technologies has been in business for decades, with substantial contracts and relationships with multinational telecommunications corporations, military contractors, the U.S. Armed Forces, and other independent contractors with expertise in the radio and mobile communications field.

135.    After completing its contract obligations to TM, Hand Technologies undertook to develop a new technology that would double data delivery (from 8 to 16bits/Hz) without increasing the SNR.

136.    TM, through its investment banker and board member John Steinmetz, induced Hand Technologies to work without pay on developing the Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000 of TM's funds in escrow for the benefit of Hand Technologies as payment toward the outstanding amounts owed under the ESA.

137.    Hand Technologies relied on those promises.  The reliance was reasonable because Steinmetz is and was a reputable investment banker and businessman, raised millions of dollars for TM, sat on TM's board, and was personally known by and trusted by Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the Hands for decades.

138.    As Hand Technologies' design and development of Unbalanced Sidelobe Modulation was coming to a conclusion, John Steinmetz informed Hand Technologies that he had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the

1    funds had remained in the escrow account until "TM had to have the money".

2  139.  Hand Technologies successfully developed the new technology that doubled output

3    (from 8 to 16bits/Hz) without increasing the SNR, the "unbalanced side modulation".

4  140.  An independent laboratory has analyzed the new technology, and confirmed that it is

5    different from TM's intellectual property. The technology Hand Technologies

6    developed is valuable, as TM itself has proven in the press release (Document 42 in

7    this action) identifying that TM had negotiated and entered into a licensing

8    agreement with a telecommunications company for the technology. See Exhibit A

9    hereto for a copy of Document 42). TM took the licensing opportunity identified in

10    its press release for itself, and deprived Hand Technologies from marketing and

11    obtaining this very contract and other opportunities to partner with this company, or

12    from marketing the technology to other telecommunication companies.

13  141.  Without justification, TM has claimed that it owns or has rights to the new

14    technology developed by Hand Technologies, demanding that Hand Technology turn

15    it over to TM, while refusing to pay Hand Technologies its product, and seeking an

16    injunction to stop Hand Technologies from marketing its invention.

17  142.  Without justification and in breach of his and TerraNova's and TM's promises,

18    Steinmetz and TerraNova released to TM the $500,000 held in escrow for the benefit

19    of Hand Technologies, breaching his, its, and their fiduciary duties as escrow agents.

20  143.  Due to TM's wrongful interference, Hand Technologies has lost opportunities to

21    market and sell its unbalanced side lobe modulation technology.

22  144.  Due to TerraNova's, Steinmetz's, and TM's wrongful interference, Hand

23    Technologies dedicated numerous hours, expended thousands of dollars, and gave up

opportunities to pursue other endeavors in order to work on Unbalanced Sidelobe Modulation.

145. Hand Technologies respectfully requests that the court enter judgment against TM Technologies and TerraNova, to compensate it for its consequential damages, expenses, fees, or other items and losses caused by its, their and his wrongful interference.

146. Enter declaratory relief to determine that TM has no rights in or to Hand Technologies unbalanced side lobe modulation.

**Count VII:    Unjust Enrichment Relating to Development of Unbalanced Side Modulation**

147. The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.

148. TM, through its investment banker and board member John Steinmetz, induced Hand Technologies to work without pay on developing the Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000 of TM's funds in escrow for the benefit of Hand Technologies as payment toward the outstanding amounts owed under the ESA.

149. Hand Technologies relied on those promises.  The reliance was reasonable because Steinmetz is and was a reputable investment banker and businessman, raised millions of dollars for TM, sat on TM's board, and was personally known by and trusted by Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the Hands for decades.

150. As Hand Technologies' design and development of Unbalanced Sidelobe Modulation was coming to a conclusion, John Steinmetz informed Hand Technologies that he

had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the funds had remained in the escrow account until "TM had to have the money".

151.   Hand Technologies successfully developed technology that doubles output (from 8 to 16bits/Hz) without increasing the SNR, the "unbalanced side modulation".

152.   Without justification and in breach of his and TerraNova's and TM's promises, Steinmetz and TerraNova released to TM the $500,000 held in escrow for the benefit of Hand Technologies, breaching his, its, and their fiduciary duties as escrow agents.

153.   Upon information and belief, TM has licensed the unbalanced side modulation technology to a client for $1 million.

154.   TM has benefited from the goods and services and technology Hand Technologies developed, the "unbalanced side modulation", such that it would be inequitable for TM to retain those benefits without paying for them.

155.   Without justification, TM has refused to compensate Hand Technologies for the reasonable cost and value of the services provided to it by Hand Technologies to develop the new technology.

156.   Hand Technologies respectfully requests that the court enter judgment against TM Technologies and TerraNova to compensate it for the reasonable value of the benefit bestowed upon TM and for other damages, expenses, fees, or other items and losses caused by its, their, and his inequitable conduct.

**[Count VIII Dismissed per Court Order]** ~~Count VIII:  Negligent Misrepresentation~~

~~157.   The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.~~

~~158.   TM, through its investment banker and board member John Steinmetz, induced Hand~~

Technologies to work without pay on developing the Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000 of TM's funds in escrow for the benefit of Hand Technologies as payment toward the outstanding amounts owed under the ESA.

159.   Hand Technologies relied on those promises.  The reliance was reasonable because Steinmetz is and was a reputable investment banker and businessman, raised millions of dollars for TM, sat on TM's board, and was personally known by and trusted by Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the Hands for decades.

160.   As Hand Technologies' design and development of Unbalanced Sidelobe Modulation was coming to a conclusion, John Steinmetz informed Hand Technologies that he had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the funds had remained in the escrow account until "TM had to have the money".

161.   Based on TM's negligent misrepresentations that it owns the unbalanced side lobe modulation technology developed by Hand Technologies, Hand Technologies has lost opportunities to market its property, which has materially harmed Hand Technologies.

162.   Based on TerraNova's, Steinmetz's and TM's misrepresentations that TerraNova and Steinmetz would safeguard the $500,000 and hold it in escrow for Hand Technologies, Hand Technologies dedicated numerous hours, expended thousands of dollars, and gave up opportunities to pursue other endeavors in order to work on Unbalanced Sidelobe Modulation.

163.   Hand Technologies respectfully requests that the court enter judgment against TM

1  Technologies and TerraNova to compensate it for reasonable value of the benefit

2  bestowed upon TM, and for the damages caused by its misrepresentations, including

3  but not limited to the damages, expenses, fees, or other items and losses caused by

4  TM's, TerraNova's, and Steinmetz's conduct.

5  **[Count IX Dismissed per Court order]** Count IX:  Intentional Misrepresentation

6  164.  The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs

7  in its answer and counterclaims.

8  165.  TM, through its investment banker and board member John Steinmetz, induced Hand

9  Technologies to work without pay on developing the Unbalanced Sidelobe

10  Modulation by promising that TerraNova would hold $500,000 of TM's funds in

11  escrow for the benefit of Hand Technologies as payment toward the outstanding

12  amounts owed under the ESA.

13  166.  Hand Technologies relied on those promises.  The reliance was reasonable because

14  Steinmetz is and was a reputable investment banker and businessman, raised millions

15  of dollars for TM, sat on TM's board, and was personally known by and trusted by

16  Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the

17  Hands for decades.

18  167.  As Hand Technologies' design and development of Unbalanced Sidelobe Modulation

19  was coming to a conclusion, John Steinmetz informed Hand Technologies that he

20  had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the

21  funds had remained in the escrow account until "TM had to have the money".

22  168.  Based on TM's intentional misrepresentations that it owns the unbalanced side lobe

23  modulation technology developed by Hand Technologies, and TM's

~~misrepresentations through Steinmetz of TerraNova's holding $500,000 of TM's~~ ~~funds in escrow for the benefit of Hand Technologies, Hand Technologies has lost~~ ~~opportunities to develop Unbalanced Sidelobe Modulation for other clients and to~~ ~~market its property, which has materially harmed Hand Technologies.~~

~~169.   Hand Technologies respectfully requests that the court enter judgment against TM Technologies and TerraNova to compensate it for the damages caused by its misrepresentations, including but not limited to the reasonable value of the benefit bestowed thereupon and for other damages, expenses, fees, or other items and losses caused by its conduct, including but not limited to punitive damages.~~

**Count X:  Breach of Escrow Duties**

170.   The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs in its answer and counterclaims.

171.   Due to the uncertainty that TM would pay Hand Technologies for the work it requested be done on the Unbalanced Sidelobe Modulation, TM, through its investment banker and board member John Steinmetz, induced Hand Technologies to work without pay on developing the Unbalanced Sidelobe Modulation by promising that TerraNova would hold $500,000 of TM's funds in escrow for the benefit of Hand Technologies as payment owed under the ESA.

172.   Upon information and belief, TerraNova and Steinmetz hold in escrow for the benefit of Hand Technologies $500,000 of TM's funds as promised. As such, TerraNova and Steinmetz undertook legally binding duties to Hand Technologies to hold the funds as promised, and then to release them to Hand Technologies upon completion of its work.

173.    Hand Technologies relied on those promises that the $500,000 of TM's funds would be held in escrow to ensure payment to Hand Technologies for the work it agreed to undertake. The reliance was reasonable because Steinmetz is and was a reputable investment banker and businessman, raised millions of dollars for TM, sat on TM's board, and was personally known and trusted by Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the Hands for decades.

174.    As Hand Technologies' design and development of Unbalanced Sidelobe Modulation was coming to a conclusion, John Steinmetz informed Hand Technologies that he had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the funds had remained in the escrow account until "TM had to have the money".  The release of the $500,000 to TM by TerraNova and Steinmetz breached the duties they had to comply with the terms of the escrow agreement, that the funds were held for the specific purpose of compensating Hand Technologies for work completed. TM was complicit in the this conduct to the damage of Hand Technologies, accepting the funds when it knew Hand Technologies had agreed to work for free based on the security of these funds being held for its benefit by TerraNova.

175.    Hand Technologies respectfully requests that the court enter judgment against TM Technologies, TerraNova, and Steinmetz to compensate it for the damages caused by its breaches of duties to hold funds in escrow and for other damages, expenses, fees, or other items and losses caused by its conduct, including but not limited to punitive damages.

**[Count XI Dismissed per Court Order]** ~~Count XI:  Breach of Escrow~~

~~176.    The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs~~

1        in its answer and counterclaims.

2    177.   TM, through its investment banker and board member John Steinmetz, induced Hand

3        Technologies to work without pay on developing the Unbalanced Sidelobe

4        Modulation by promising that TerraNova would hold $500,000 of TM's funds in

5        escrow for the benefit of Hand Technologies as payment toward the outstanding

6        amounts owed under the ESA.

7    178.   Hand Technologies relied on those promises.  The reliance was reasonable because

8        Steinmetz is and was a reputable investment banker and businessman, raised millions

9        of dollars for TM, sat on TM's board, and was personally known by and trusted by

10       Alan Hand and Hand Technologies, being Cynthia Hand's cousin and known by the

11       Hands for decades.

12   179.   As Hand Technologies' design and development of Unbalanced Sidelobe Modulation

13       was coming to a conclusion, John Steinmetz informed Hand Technologies that he

14       had released the $500,000 to TM Technologies.  Steinmetz told Alan Hand that the

15       funds had remained in the escrow account until "TM had to have the money".

16   180.   Hand Technologies respectfully requests that the court enter judgment against TM

17       Technologies, TerraNova, and Steinmetz to compensate it for the damages caused by

18       its breaches of duties to hold the funds in escrow and for other damages, expenses,

19       fees, or other items and losses caused by its, their and his conduct, including but not

20       limited to punitive damages.

21   **[Count XII Dismissed per Court order]** Count XII:  Breach of Contract, Equipment

22       Sale

23   181.   The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs

69

1      in its answer and counterclaims.

2   182.   Hand Technologies and TM agreed that the Hand Technologies had the right to

3      purchase from TM for a price of $10,000.00 the equipment provided by TM to Hand

4      Technologies.

5   183.   Without justification, TM has materially breached its agreements by demanding that

6      Hand Technologies return the equipment.

7   184.   Hand Technologies respectfully requests that the court enter judgment against TM

8      Technologies to compensate it for its consequential damages, expenses, fees, or other

9      items and losses caused by its breach of contract.

10   185.   Enter declaratory relief such that due to Plaintiff's material breaches of contract, the

11      Hand Defendants are relieved of any obligations to TM Technologies.

12   **[Count XII Dismissed per Court Order]** ~~Count XII:    Specific Performance,~~

13   ~~Equipment Sale~~

14   186.   The Hand Defendants/Counterclaimants repeat and reallege all preceding paragraphs

15      in its answer and counterclaims.

16   187.   Hand Technologies and TM agreed that the Hand Technologies had the right to

17      purchase from TM for a price of $10,000.00 the equipment provided by TM to Hand

18      Technologies.

19   188.   Without justification, TM has materially breached its agreements by demanding that

20      Hand Technologies return the equipment.

21   189.   Hand Technologies respectfully requests that the court enter judgment against TM

22      Technologies and an order to specifically enforce the contract for TM to sell its

23      equipment to Hand Technologies, and any other equitable relief the court deems

~~reasonably necessary and just.~~

WHEREFORE, Hand Technologies, Inc., Rex Alan Hand, and Cynthia Hand respectfully request that the Court:

A.    Dismiss all of Plaintiff's claims with prejudice;

B.    Enter judgment against Plaintiff on all Counterclaims against Plaintiff;

C.    Award Hand Technologies damages in an amount that is reasonable and necessary to compensate it for all Counterclaim Defendants' breaches of contract;

D.    Award Hand Technologies equitable relief in an amount that will reasonably compensate it for the benefits conferred on Plaintiff and/or the reasonable value of its services provided to Plaintiff;

E.    Award Hand Technologies damages in an amount that is reasonable and necessary to compensate it for damages caused by all Counterclaim Defendants' misrepresentations;

F.    ~~Enter an order specifically enforcing the agreement to sell the equipment to Hand Technologies;~~

G.    Award all Defendants and Counterclaimants their attorneys' fees and costs;

H.    Enter declaratory relief that the Hand Defendants are relieved of any and all obligations to TM Technologies;

I.    Enter declaratory relief that the Hand Technologies owns the unbalanced side lobe modulation technology free and clear of any claims by TM; and

J.    Any other relief the court deems equitable and just.

Dated: October 9, 2019.

1                                          LAW OFFICE OF LYNN ERIC GOAR, P.C.
                                           /s/Lynn Goar
2                                          LYNN ERIC GOAR

3

4                                          McCANDLESS AND NICHOLSON, PLLC
                                           /s/ Roy S. McCandless
5                                          ROY S. McCANDLESS

6    Copy mailed October 9, 2019, to:

7    James S. O'Brien, Jr.
     Daniel V. Derby
8    **Pryor Cashman LLP**
     7 Times Square
9    New York, NY 10036

10   Kevin M. Sherlock
     **The Law Firm of Heurlin Sherlock**
11   7320  N. La Cholla Blvd., Ste 154
     Tucson, AZ 85741

12

13

14

15

16

17

18

19

20

21

22

23

198.0.141.241

*Ex. A*

**BusinessWire**
A Berkshire Hathaway Company

⊕ TM TECHNOLOGIES®

# TM Technologies Issues First License for Telecom

August 06, 2018 01:59 PM Eastern Daylight Time

TUCSON, Ariz.—(BUSINESS WIRE)—TM Technologies, a Tucson, Arizona, based communications technology firm, has announced that after several years of development, its patented TM modulation DSP method has completed validation testing by a renowned independent RF signals analysis lab. Among the findings, the evaluating engineering team's report stated, "*Based on the doubling of the information rate within the confined channel, a two times improvement in spectral efficiency was observed as compared to the traditional QAM256 signal.*"

Following these test results, an initial development and use license was negotiated with an affiliated carrier-grade telecom radio company for the integration of the TM waveform within its microwave backhaul radio links. The resulting radio is planned to be capable of doubling 256-QAM data rates, or 16 bits per second per Hertz, at a noise level representative of 256-QAM alone. This calculates to an equivalent 65,536-QAM at a 256-QAM noise level, in short -- representing one of the most efficient communications data methods to date. It is believed that the emplaced microwave radio link will be prepared, tested and available for customers in the 4th quarter of this year.

Company CEO Dan Hodges noted that "...*TM's simulations and its effectiveness in high-order QAMs prove that it is theoretically useful across the entire RF spectrum and frequency range. The Company will be developing TM software cores for use with PSK, FSK and OFDM overlays in telecom, satellite, WiFi and fiber-use cases. As an example, while CDMA technology added a near 30% efficiency increase to communications channels, TM has shown to double the efficiencies of sophisticated modern modulation methods, and in the cases of simpler modulations such as AM, FM, PSK and FSK, it can be multiples of that. With the 'spectrum crunch' in full swing, we hope to see TM added into every channel possible to delay the shortage's impact on our culture.*"

## Contacts

TM Technologies
Zach McClain, +1.520.512.5299
Info@TMTechnologies.com

*TM Technologies v. Hand Technologies*
**Motion to Dismiss; Change Venue**
**Exhibit B**